1   Timothy P. Dillon (CSB No. 123953)
    LAW OFFICES OF
2   TIMOTHY P. DILLON
    361 Forest Avenue, Suite 205
3   Laguna Beach, California 92651
    (949) 376-2800
4   (949) 376-2808 Facsimile
    timothy@dillonlaw.net
5
    Andrew S. Friedman (ASB No. 005425)
6   To Be Admitted *Pro Hac Vice*
    BONNETT, FAIRBOURN,
7   FRIEDMAN & BALINT, P.C.
    2901 N. Central, Suite 1000
8   Phoenix, AZ 85012
    Telephone: (602) 776-5902
9   Facsimile: (602) 274-1199
    afriedman@BFFB.com
10
11  Attorneys for Plaintiffs
12
13              UNITED STATES DISTRICT COURT
14             CENTRAL DISTRICT OF CALIFORNIA
15                    WESTERN DIVISION
16  CELEDONIA X. YUE, M.D., on behalf   |  Case No.   CV08-01506 CAS
17  of the class of all others similarly
    situated, and on behalf of the General  |  **COMPLAINT**                    (CTx)
18  Public,                             |
                                        |  CLASS ACTION
19            Plaintiffs,               |
                                        |  1. Breach of Contract
20       vs.                            |  2. Injunctive and Restitutionary Relief
                                        |     Pursuant to Business & Professions
21  CONSECO LIFE INSURANCE              |     Code section 17200, *et seq.*
    COMPANY, successor to Philadelphia  |  3. Declaratory Relief
22  Life Insurance Company and formerly |
    known as Massachusetts General Life |  JURY TRIAL DEMANDED
23  Insurance Company,                  |
24            Defendant.                |
25
26
27
28

1    Plaintiff, for her complaint against Defendant, alleges the following upon

2  personal knowledge as to herself and her own acts and upon information and belief

3  as to all other matters.

4       1.    Jurisdiction is based on 28 U.S.C. section 1332(a).

5                        NATURE OF ACTION

6       2.    This is a class action brought by Plaintiff individually and on behalf of

7  all owners of Valulife and Valuterm universal life insurance policies (the

8  "Policies") administered by Defendant Conseco Life Insurance Company

9  ("Conseco Life").  Plaintiff seeks injunctive declaratory and monetary relief

10  requiring Defendant to forego staggering costs of insurance increases that they

11  unlawfully imposed upon Valulife and Valuterm policyholders and to repay or

12  restore to the policies' accumulation accounts any unlawful charges that it has

13  already collected.

14       3.    Previously, in an action entitled *Rosenbaum, et al. v. Philadelphia Life

15  Insurance Co., et al.*, Case No. 93-0834 MRP (EEX) (the "*Rosenbaum* Action"),

16  this Court (the Honorable Mariana R. Pfaelzer) held that the defendant insurance

17  companies, now known as Conseco Life, materially breached the cost of insurance

18  clause in certain of its universal life insurance policies by unlawfully repricing

19  those policies (*i.e.*, increasing the cost) to pass on to its policyholders a tax that

20  Congress imposed on life insurance companies.  This Court held that the policies

21  "did not permit [Conseco Life] to increase cost of insurance to account for a

22  change other than in <u>future</u> mortality experience." (emphasis added).  Through

23  certification of a national class action, Defendant Conseco Life was forced to

24  return all the unlawful cost of insurance charges (plus interest) to its policyholders.

25  The Policies, at issue in this action, have the exact same cost of insurance

26  provisions as the policies adjudicated by this Court in the *Rosenbaum* Action.

27  Thus, under this Court's prior orders, in the Policies, without question, the <u>only</u>

28  variable element in the cost of insurance formula is the cost of insurance rate and

1  Defendant can only increase the cost of insurance rate based upon its expectation

2  as to _future_ mortality experience and for no other reason.

3      4.      Now, for the Valulife and Valuterm Policies, even though they have

4  identical policy provisions as the policies adjudicated by this Court in the

5  _Rosenbaum_ Action, Defendant has unlawfully re-priced those policies and

6  drastically and precipitously increased the cost of insurance charges. The huge

7  increases begin in policy year 21 and the increases are so large and sudden that

8  they cannot possibly be based on expectations as to future mortality experience.

9  The impact on policyholders will be a devastating increase in the cost of these life

10  insurance policies and one, according to the language of the policies, that is not

11  permitted. Since many of these policyholders are now elderly and/or have medical

12  conditions, they will be left with reduced life insurance coverage or no life

13  insurance at all. Plaintiff believes that Defendant will unlawfully increase the cost

14  of insurance charges to attempt to greatly increase profits on this group of policies.

15      5.      By this action, Plaintiff, on behalf of herself and on behalf of the other

16  impacted policyholders, seek an injunction requiring Defendant to reverse the

17  unlawful increases in cost of insurance charges on the Policies and to fulfill their

18  contractual and other obligations to Plaintiff and the Class. Plaintiff seeks a

19  corresponding declaration that Defendant must determine the cost of insurance

20  charges for the Policies in accordance with the terms of the Policies and reinstate

21  the cost of insurance charges that existed before the recent unlawful increases.

22  Plaintiff also seeks corresponding monetary relief requiring Defendant to repay to

23  Plaintiff and the Class, or restore to the accumulation accounts of the Policies, the

24  amount of any unlawful overcharges.

25      6.      Further, Plaintiff, in accordance with Business and Professions Code

26  section 17200, _et seq_., on behalf of all affected policyholders of Defendant, seek an

27  order enjoining Defendant from, among other things, collecting the unlawful

28  increased charges from its policyholders and forcing Defendant to reinstate those

1    policyholders who were forced to surrender their policies because of the dramatic

2    and unlawful increase in cost. Plaintiff also seeks an order of restitution to be paid

3    by Defendant to the Class for the amounts unlawfully collected.

4                                       PARTIES

5          7.      Plaintiff Celedonia X. Yue, M.D. is, and at all times herein mentioned

6    was, a resident and citizen of the State of California. In or about September 1995,

7    Ruth S. Yue became the insured under a universal life insurance policy (known as

8    Valulife) issued by Defendant and Plaintiff Celedonia X. Yue, M.D. is the owner

9    of this insurance policy. When originally issued and continuing through the

10    present, the policy had a face amount of $400,000 with policy number

11    1090236101. A true and correct copy of the policy is attached hereto as Exhibit

12    "A".

13          8.      Defendant Conseco Life, and at all relevant times was, and is, a

14    corporation duly organized and existing under and by virtue of the laws of the

15    State of Indiana and transacting the business of insurance in the State of California

16    and within this judicial district. Until 1996, Conseco Life was known as

17    Massachusetts General Life Insurance Company ("Massachusetts General") and, in

18    or about 1998, Philadelphia Life Insurance Company ("Philadelphia Life") was

19    merged into Conseco Life. Both Massachusetts General and Philadelphia Life are

20    now known as Conseco Life. Massachusetts General and Philadelphia Life

21    originally issued the life insurance policies at issue in this action and they were the

22    defendants in the *Rosenbaum* Action.

23                       JURISDICTION AND VENUE

24          9.      Jurisdiction is proper in this Court under 28 U.S.C. section 1332(a) by

25    virtue of the diversity of citizenship between the Plaintiff, on one hand, and the

26    Defendant, on the other hand. The amount in controversy for each Plaintiff and

27    member of the class exceeds the sum of $75,000, exclusive of interest and costs.

28          10.     Venue is proper in this district under 28 U.S.C. section 1391(a)(1)(2)

1  by virtue of (i) the residence of Defendant in this district and (ii) that a substantial
2  part of the events giving rise to the claims occurred in this district.

3                        CLASS ACTION ALLEGATIONS

4        11.    This action is brought by Plaintiff individually and on behalf of a class
5  (the "Class") pursuant to Rules 23 (a) and (b)(2) and (b)(3) of the Federal Rules of
6  Civil Procedure. The Class consists of:

7        12.    All owners of Valulife and Valuterm "universal life" insurance
8  policies (the "Policies") issued by either Massachusetts General or Philadelphia
9  Life and that were later acquired and serviced by Conseco Life. The Class does
10 not include officers or actuaries (or their immediate families) of Massachusetts
11 General, Philadelphia Life, Conseco Life, or any of their parent companies,
12 including Conseco, Inc.

13       13.    The Class consists of thousands of consumers of life insurance and is
14 thus so numerous that joinder of all members is impracticable. The identities and
15 addresses of Class members can be readily ascertained from business records
16 maintained by Conseco Life.

17       14.    The claims asserted by Plaintiff are typical of the claims of the Class.

18       15.    Plaintiff will fairly and adequately protect the interests of the Class in
19 that they have no interest antagonistic to those of the other Class members, and
20 Plaintiff has retained attorneys who are knowledgeable and experienced in life
21 insurance matters, as well as class and complex litigation (the same counsel who
22 successfully represented the classes of policyholders certified by this Court (i) in
23 the *Rosenbaum* Action; and (ii) in MDL No. 1610 AHM entitled *In Re Conseco*
24 *Life Insurance Company Cost of Insurance Litigation* described below).

25       16.    Plaintiff requests that the Court provide Class members with written
26 notice and the right to opt-out of any Class certified in this action.

27                            Rule 23 (b)(2)

28       17.    This action is appropriate as a class action pursuant to Rule 23 (b)(2).

                                    4

Plaintiff seeks injunctive relief and corresponding declaratory and incidental monetary relief for the Class. Defendant acted in a manner generally applicable to the entire Class by increasing in a formulaic manner the cost of insurance charges on all Valulife and Valuterm Policies owned by members of the Class.

18.    Defendant's wrongful actions to unlawfully increase the cost of insurance charges on the Policies, if not enjoined, will subject Class members to enormous continuing future harm and will cause irreparable injuries to Class members who are compelled to surrender valuable life insurance policies with no economically viable option for alternative life insurance. Although Class members will sustain damages in the form of increased cost of insurance charges and depleted accumulation account values, the adverse financial impact of Defendant's unlawful actions is continuing and, unless enjoined, will cause exponentially higher damages to Class members in future years. Thus, injunctive and other equitable and declaratory relief are primary goals in this litigation, Plaintiff would bring suit to obtain injunctive and declaratory relief even in the absence of available monetary remedies and injunctive and declaratory relief are reasonably necessary and appropriate when Plaintiff prevails.

19.    The monetary relief sought on behalf of the Class to remedy Defendant's wrongful conduct flows directly from Defendant's liability to the Class as a whole and can be objectively determined. The increased cost of insurance charges and any diminution of the accumulation account values of the Policies owned by Class members can be mathematically quantified and do not depend on any subjective assumptions or idiosyncrasies that are peculiar to individual Class members.

<u>Rule 23 (b)(3)</u>

20.    This action also is appropriate as a class action pursuant to Rule 23 (b)(3) of the Federal Rules of Civil Procedure.

21.    The questions of law or fact affecting the Class predominate over

1  those questions affecting only individual members.  Those common questions
2  include:

3     a.   whether Defendant's actions to increase the cost of insurance charges
4          on the Policies violated the terms of the Policies;

5     b.   whether Conseco Life breached its contracts with Plaintiff and
6          members of the Class;

7     c.   whether Defendant breached obligations of good faith and fair dealing
8          owed to Plaintiff and members of the Class;

9     d.   whether Defendant committed acts of unfair competition as defined
10         by California Business and Professions Code section 17200, *et seq.*;

11    e.   whether Plaintiff and members of the Class are entitled to specific
12         performance, injunctive relief or other equitable relief against
13         Defendant; and

14    f.   whether Plaintiff and Class members are entitled to receive incidental
15         monetary relief or, alternatively, damages as a result of the unlawful
16         conduct by Defendant alleged herein.

17    22.   A class action is superior to other available methods for the fair and
18 efficient adjudication of this controversy for at least the following reasons:

19    a.   given the age of members of the Class, many of whom are elderly and
20         have limited resources, the complexity of issues involved in this
21         action and the expense of litigating the claims, few, if any, Class
22         members could afford to seek legal redress individually for the
23         wrongs that Defendant committed against them, and absent Class
24         members have no substantial interest in individually controlling the
25         prosecution of individual actions;

26    b.   when Defendant's liability has been adjudicated, claims of all Class
27         members can be determined by the Court;

28    c.   this action will cause an orderly and expeditious administration of the

1  Class claims and foster economies of time, effort and expense, and
2  ensure uniformity of decisions;

3  d. without a class action, many Class members would continue to suffer
4   injury, and Defendant's violations of law will continue without
5   redress while Defendant continues to reap and retain the substantial
6   proceeds of their wrongful conduct; and

7  e. this action does not present any undue difficulties that would impede
8   its management by the Court as a class action.

9        BACKGROUND

10 A. In a Universal Life Policy, There are Only Two Material Variable Elements—
11  (i) the Interest Rate, and (ii) the Cost of Insurance Rate

12  23. The insurance policies at issue in this action are a type known as a
13 "Universal Life" insurance policy (hereinafter "Universal Life Policy"). A
14 Universal Life Policy is designed so that the policyholder shares the risk of the
15 mortality experience and investment functions with the insurance company. The
16 "cost of insurance charge" paid each month to the policyholder compensates the
17 insurance company for the mortality risk and this charge is tied to the future
18 mortality experience of the insurance company. The other variable element is the
19 interest rate paid by the insurance company on accumulations that build up for the
20 benefit of the policyholder. The rate of interest will vary depending on general
21 market and investment conditions in the economy. With the variable (i) rate of
22 interest and (ii) cost of insurance (mortality) charge, the policyholder participates
23 with the insurance company as defined by the terms of a Universal Life Policy.

24  24. A Universal Life Policy is typically marketed, sold and purchased on
25 the premise that a certain number of premium payments will fund the policy at a
26 certain level of insurance coverage through maturity. This is possible because the
27 premiums are paid into an account value which builds up over time and the cost of
28 maintaining the policy is subtracted from the account value. Therefore, a

1   Universal Life Policy gives a policyholder flexibility as to the timing and amount

2   of premium payments.

3       25.   Under a Universal Life Policy, the policyholder pays a premium and

4   the premium (less an expense charge) is deposited into the account value or

5   accumulation fund (*i.e.*, a fund that accrues for the policyholder's benefit).

6       26.   Each month that a Universal Life Policy is in force, the insurance

7   company deducts the cost of insurance from the account value and credits interest

8   on the funds in the account value. Again, the cost of insurance is designed to cover

9   the future mortality risk to the insurance company (*i.e.*, as described by Defendant

10  Conseco Life, the "monthly cost of pure insurance protection under the policy").

11      27.   Subject to a minimum guaranteed rate of interest, as determined in

12  good faith by the insurance company, the insurance company credits interest on the

13  funds in the account value and each month the interest is added to the account

14  value.

15      28.   The account value is defined by the policy as the balance of the net

16  premiums (premium less an expense charge) paid by the policyholder and credited

17  interest, decreased by monthly deductions. Subject to further conditions, a

18  policyholder may also take loans from the account value.

19      29.   According to a Universal Life Policy, the monthly deduction is an

20  amount taken from the account value at each monthly deduction date, and is

21  calculated by adding the cost of insurance charge to a monthly expense charge. As

22  long as there are enough funds in the account value to pay the monthly deduction,

23  the Universal Life Policy will remain in force.

24      30.   Under a Universal Life Policy, the cost of insurance charge is the

25  primary monthly deduction from the account value. For example, in the Policies,

26  the cost of insurance charge is defined as:

27          COST OF INSURANCE

28          1.   The monthly cost of insurance for the policy is

calculated as (a) multiplied by the result of (b)
minus (c) where:

    a.    Monthly cost of insurance rate as described in the Cost of Insurance Rates section;

    b.    Insured's death benefit at the beginning of the policy month divided by 1.0036748; and

    c.    Accumulation account at the beginning of the policy month.

    Divide the result by $1,000.

Exhibit "A" at p.9.

31.    The cost of insurance charge is basically the face amount of the coverage provided by the insurance policy less the account value multiplied by the cost of insurance rate. The resulting cost of insurance charge fluctuates depending, among other things, on the amount of funds in the account value at any given time and the cost of insurance rate. By design, the rates become larger each year as the insured ages.

**B.**    Under the Express Policy Terms, the Cost of Insurance Rate Can Only Be Changed Based on Defendant's "Expectation as to Future Mortality Experience"

32.    Under the express terms of a Universal Life Policy, the cost of insurance rate is connected to and dependent solely on the future mortality experience of the insurance company. For example, as set forth in the Policies, the mortality rate is based on the "Commissioners 1980 Standard Ordinary Mortality Table." Indeed, under the terms of the Policies, the mortality cost adjustments are premised solely on the future mortality experience of Defendant Conseco Life.

33.    The Policies provide, in pertinent part, as follows:

    The cost of insurance rates shown above are based on the Commissioners 1980 Standard Ordinary Female

1  Mortality Table . . ..Actual monthly cost of insurance

2  rates will be determined by the company based on its

3  expectation as to <u>future mortality experience</u>. However,

4  the actual cost of insurance rates will not be greater than

5  those shown above.

6 Exhibit "A" at p.4. (emphasis added).

7  34. The Policies in the "COST OF INSURANCE RATES" section,

8 provide, in pertinent part, as follows:

9  Current monthly cost of insurance rates will be

10  determined by the Company based on its expectation as

11  to <u>future mortality experience</u>.

12 Exhibit "A" at p.9. (emphasis added).

13  35. Thus, under the terms of a Universal Life Policy, including the

14 Policies, once the actual cost of insurance rates are set by the insurance company,

15 they can only be increased because of anticipated future worsening mortality

16 experience of insurance company (*i.e.*, more death claims anticipated in the future

17 than were previously expected).

18  36. The calculation of the cost of insurance charge is highly complex and

19 it is completely impossible for any policyholder to understand the computation of

20 the cost of insurance charge because, among other reasons, insurance companies,

21 including Conseco Life, do not and will not disclose the actual cost of insurance

22 rates (used in the calculation of cost of insurance charges) to policyholders. In

23 other words, the policyholder does not know or see the actual cost of insurance

24 rates charged by the insurance company. As set forth in paragraph 39 below, the

25 insurance company, including Conseco Life, only advises as to the monthly cost of

26 insurance charge deducted from the account value and not the actual cost of

27 insurance rate.

28  37. While there are maximum costs of insurance rates set forth in a

1   Universal Life Policy, without exception, a Universal Life Policy, including the
2   Policies, are priced and sold by insurance companies with cost of insurance rates
3   set substantially less than the maximum cost of insurance rates.  Otherwise, the
4   insurance policy would be prohibitively expensive and could not be marketed.
5   However, after a Universal Life Policy is issued with cost of insurance rates
6   substantially below the maximum cost of insurance rates, the cost of insurance
7   rates and resulting cost of insurance charges can only be increased if there is a
8   material change in the future expectations of mortality experience for the Universal
9   Life Policies of the insurance company.

10      38.    Each year, on the anniversary date of the inception of a Universal Life
11   Policy, the insurance company sends to the policyholder (with a copy to the listed
12   insurance agent) an annual report detailing certain values of the insurance policy,
13   the amounts deducted, and interest credited during the preceding year.  Thus, the
14   annual report will show for each month during the preceding year the premiums
15   paid by the policyholder, the cost of insurance charges, any expense deductions
16   taken from the policy, as well as the interest credited to the account value.  Again,
17   an insurance company does not advise policyholders concerning the actual cost of
18   insurances rates used in the calculation of the cost of insurance charges.

19   C.    As Found by this Court, Defendant Materially Breached Universal Life
20         Policies By Increasing the Cost of Insurance Charges for a Reason Other
21         Than Its "Expectation as to Future Mortality Experience"

22      39.    In or about 1992, even though the cost of insurance is explicitly tied to
23   future mortality experience, Defendant Conseco Life (previously known as
24   Massachusetts General and Philadelphia Life) decided to increase the cost of
25   insurance charges in its universal life insurance policies known as Lifetime and
26   Lifestyle policies to pass through some of the D.A.C. tax expense to their
27   policyholders.  In or about 1990, as part of the Reconciliation Act, Congress had
28   imposed the D.A.C. tax on life insurance companies.  Defendant made an artificial

11

1  adjustment in the cost of insurance rate unrelated to its expectations as to future

2  mortality experience in order to increase premiums and thereby collect the D.A.C.

3  tax from its policyholders, rather than pay it out of company profits or surplus as

4  intended by Congress.

5      40.   On or about November 18, 1992, Plaintiff James Rosenbaum ("Mr.

6  Rosenbaum") filed the *Rosenbaum* Action, alleging, among other claims, that

7  Philadelphia Life and Massachusetts General (now Conseco Life) breached the

8  Lifetime and Lifestyle policies by increasing the cost of insurance charges to pass

9  on a portion of the DAC tax liability of Conseco Life.  Mr. Rosenbaum maintained

10 that, according to the language of his insurance policy, the cost of insurance rates

11 could only be increased due to changes in expectations as to the future morality

12 experience of Conseco Life.

13     41.   By order and decision dated March 3, 1994 (Exhibit "B" hereto), in

14 the *Rosenbaum* Action, this Court framed the question presented as follows:

15         In this case, the Court must determine whether the term

16         "cost of insurance" in the Flexible Policy includes factors

17         other than the Companies' expectation as to future

18         mortality experience.  Put another way, the Court must

19         decide whether the Flexible Policy permitted the

20         Company to increase the cost of insurance to account for

21         a change other than in expectations as to future mortality

22         experience.

23 Exhibit "B" at pp. 4-5 (emphasis added).

24     42.   In this Court's order and decision, this Court further held:

25         The natural and reasonable interpretation of the Flexible

26         Policy, especially in conjunction with the Flexible Policy

27         language under the chart of "Guaranteed Maximum

28         Monthly Cost of Insurance Rates," is that expectations as

12

1            to future mortality experience are <u>the</u> basis for the cost of

2            insurance rates. *Therefore, any change in the cost of*

3            *insurance would logically be based on a change in the*

4            *Companies' expectations as to future mortality*

5            *experience.*

6 Exhibit "B" at p.5 (emphasis in original; italics added).

7       43.     As this Court further held in its order and decision of March 3, 1994,

8 "[t]he increase in cost of insurance under the Flexible Policies was not due to any

9 changes in expectations as to <u>future</u> mortality experience." Exhibit "B" at p.4

10 (emphases added). Indeed, in its order and decision, this Court held:

11            The Court has no difficulty in concluding that the

12            Flexible Policy did not permit the Companies to increase

13            the cost of insurance to account for a change other than in

14            <u>future mortality experience</u> * * * [b]ecause all

15            ambiguities must be resolved against the insurer, the

16            Court finds that [Defendant] breached its obligations

17            under the Flexible Policies . . . when it increased the cost

18            of insurance to pass on the DAC tax.

19 Exhibit "B" at p.6 (emphasis added).

20       44.     Thereafter, in the *Rosenbaum* Action, Plaintiff Rosenbaum, along

21 with Plaintiff Bernard Gilbert, filed a motion to certify a national class action on

22 behalf of all similarly situated policyholders of Philadelphia Life and

23 Massachusetts General (now Conseco Life) with the same language in their life

24 insurance policies and who also paid increased cost of insurance charges.

25       45.     During the *Rosenbaum* Action, because of the summary adjudication

26 ruling against Conseco Life, Conseco Life returned the cost of insurance rates to

27 the level prior to the unlawful increase that was not related to future mortality

28 experience.

13

1    46.    By order entered on February 13, 1995, this Court certified, for all

2    members of the Class throughout the nation, the claims for breach of contract

3    premised on the passing on of the DAC tax liability by increasing the cost of

4    insurance rates contrary to the terms of the Lifetime and Lifestyle polices.  The

5    liability of Conseco Life to the class members for this claim was established by the

6    order of this Court entered on February 13, 1995.  In addition, by order dated

7    February 13, 1995, this Court certified, as a sub-class for those members of the

8    Class residing in the State of California, the claims for breach of the implied

9    covenant of good faith and fair dealing.

10   D.    By Order of This Court, in the *Rosenbaum* Action, Defendant Was Forced to

11        Return the Wrongfully Taken Cost of Insurance Charges Under the Lifestyle

12        and Lifetime Universal Life Policies to its Policyholders

13   47.    After certification of the classes by this Court, but before the

14   dissemination of the written notice of pendency of a class action, and under the

15   guidance of this Court, the parties reached a settlement of the *Rosenbaum* Action

16   on a nationwide basis.  In essence, under the settlement, policyholders received

17   100% of the wrongfully taken cost of insurance charges, plus interest, from

18   Defendant.

19   48.    In addition, under the settlement, for those class members who

20   wrongfully paid surrender charges on the termination of their insurance policy

21   because of the increased cost of insurance charges, Defendant created a separate

22   fund.  Under the supervision of a special master, as provided for in the settlement,

23   the damaged policyholders applied for and received their surrender charges from

24   this fund.

25   49.    In all, Defendant paid in excess of the sum of $20 million to settle the

26   *Rosenbaum* Action and to return the unlawful charges, plus interest, to the

27   impacted policyholders, pay damages to policyholders, and pay attorneys' fees and

28   costs to class counsel.

E.   Respecting the Lifetime and Lifestyle Policies, in 2003 and 2004, Conseco Life Again Wrongfully Increased Cost of Insurance Charges

50.   In or about 2003 and 2004, for the Lifetime and Lifestyle universal life insurance policies at issue in the *Rosenbaum* Action, Defendant Conseco Life announced that it was again increasing the cost of insurance charges. This time the increase was based on Conseco Life eliminating some unidentified "non-guaranteed" "benefit" because of the "economic downturn . . . [and] significantly diminished investment yields." Before this change, unknown to its policyholders, Conseco Life computed the cost of insurance charges using an actuarial variable (called the "R-Factor") which had the effect of reducing the cost of insurance charges assessed against the policyholder's accumulation account. Conseco Life's "elimination" of the R-Factor increased the cost of insurance charges for many Lifestyle and Lifetime policyholders.

51.   As a result of these cost of insurance increases, impacted policyholders filed numerous actions against Conseco Life and they were consolidated by the Judicial Panel on Multidistrict Litigation in this Court before the Honorable A. Howard Matz in a MDL proceeding entitled *In Re Conseco Life Insurance Company Cost of Insurance Litigation*, MDL No. 1610 AHM. In MDL No. 1610, among other things, Plaintiffs and members of the Class maintained the cost of insurance charges under the Lifetime and Lifestyle policies could only be increased in the event that Conseco Life changed its expectation as to future mortality experience in accordance with the language contained in the cost of insurance provisions. In other words, the cost of insurance charges could not be increased because of a change in the formula for computing the cost of insurance charges. The cost of insurance increases allowed Conseco Life to eliminate many of the increasingly unprofitable policies, to the detriment of policyholders who were left with life insurance policies that had suddenly become prohibitively expensive.

52.     Plaintiffs in MDL No. 1610 also alleged that Conseco, Inc., the ultimate parent of Conseco Life, exercised such dominion and control over the affairs and actions of Conseco Life that these companies had no separate existence. Plaintiffs alleged that Conseco Life eliminated the R-Factor, and thereby imposed dramatic premium increases on its policyholders, to enhance the balance sheet of Conseco, Inc., which was attempting to raise capital in the public financial markets after emerging from bankruptcy in September 2003. Therefore, Plaintiffs alleged that Conseco, Inc. was the alter ego of Conseco Life and Conseco, Inc. was liable and responsible for all of Conseco Life's actions including the unlawful cost of insurance increases on the Lifetime and Lifestyle policies.

53.     By orders dated April 25 and April 26, 2005, this Court (the Honorable A. Howard Matz) certified a national class of policyholders as to the breach of contract and injunctive relief causes of action and a California class of policyholders respecting the causes of action for insurance bad faith and violation of Section 17200, *et seq.*, of the California Business and Professions Code.

F.     Conseco Life Intends to Massively Increase the Cost of Insurance Rates For the Valulife and Valuterm Policies Not Based on Its "Expectation as to Future Mortality Experience"

54.     As alleged above, under the rulings of this Court and the explicit language of the Policies, an increase in the cost of insurance rates and attendant cost of insurance charges can only be predicated on Defendant's expectations as to future mortality experience and nothing else. Upon information and belief, Conseco Life intends to dramatically and suddenly increase the cost of insurance charges for the Policies beginning in policy year 21 for reasons other than its expectation as to future mortality experience. In recent times, mortality experience in the United States has improved and mortality experience has not deteriorated. In other words, it is well known that the population in this country is living significantly longer than was anticipated in the past and not living shorter than

1  anticipated.  For example, according to the Society of Actuaries, Report of the

2  Individual Life Insurance Valuation Mortality Task Force, issued November 2001,

3  mortality has improved for males, ages 55-80, in the range of 1 percent each year

4  and the improvement in mortality for females, ages 55-80, is in the range of .5

5  percent each year.  Therefore, Defendant's expectation as to the future mortality

6  respecting the Polices could not have suddenly and precipitously decreased

7  precisely at policy year 21 so as to permit the massive increases in cost of

8  insurance rates for the Policies beginning in policy year 21.

9      55.    Thus, once again, Conseco Life has impermissibly increased cost of

10  insurance charges on its universal life policies not based on its expectation as to

11  future mortality experience.  Under such circumstances, Conseco Life's increases

12  of the cost of insurance charges, in flagrant and material violation of the plain

13  language of the Policies, is unprecedented in the life insurance industry,

14  particularly in light of (i) Conseco Life's prior breach of the same provisions in the

15  Lifetime and Lifestyle policies as found, as a matter of law, by this Court in the

16  *Rosenbaum* Action; and (ii) Conseco Life's impermissible increase in cost of

17  insurance charges as alleged by the class of policyholders in MDL No. 1610.

18      56.    At no time did Conseco Life disclose that it intended to impose

19  massive cost of insurance increases beginning in policy year 21 of the Policies.

20  The policyholders, including the Plaintiff in this action, relied on the lower cost of

21  insurance rates in purchasing the Policies, continuing to pay premiums respecting

22  the Policies, and not seeking insurance coverage elsewhere.

23  G.   Through the Cost of Insurance Increases, Defendant Conseco Life Will

24       Cause Many of the Policies to Lapse

25      57.    The increases in cost of insurance charges for the Policies are so

26  dramatic, sudden, and unexpectedly large that many members of the Class are now,

27  or will be, unable to afford to pay these huge and unexpected increases in premium

28  required to keep their insurance policies in force.  Many policyholders will, or have

1  been, forced to surrender their life insurance policies. In addition, upon

2  information and belief, many of these policyholders are elderly and uninsurable

3  and, after surrender of their policies, they will thereby be left without insurance

4  protection and/or adequate insurance protection.

5      58.   Upon information and belief, from its perspective, Conseco Life came

6  to the realization that the Policies could provide a source of additional profits either

7  through additional cost of insurance collections or forcing policyholders to

8  surrender their Policies relieving Conseco Life of the obligation of paying future

9  death benefits on this seasoned book of business. The huge increases in cost of

10  insurance are so large that Conseco Life must have anticipated that many

11  policyholders would be unable and/or unwilling to pay these substantially

12  increased costs to Conseco Life. Under these circumstances, upon information and

13  belief, there is little question that Conseco Life intended, at a minimum, to

14  substantially reduce the number of the Policies that are in force.

15      59.   In sum, Defendant Conseco Life's actions have greatly damaged

16  many thousands of policyholders throughout the United States. These

17  policyholders depended on the good faith and honest actions of Conseco Life to

18  protect them and to provide life insurance benefits to their families and loved ones

19  when they die. Rather than honor such trust, particularly when many of these

20  policyholders are now ill and/or elderly, Conseco Life has violated and broken that

21  trust with the huge and devastating increases in cost of the Policies.

22      60.   Plaintiff and members of the Class were unaware of Conseco Life's

23  unlawful misconduct and intentions and Plaintiff and members of the Class did not

24  know anything about Conseco Life's true intentions regarding the cost of insurance

25  charges for the Policies. Plaintiff and members of the Class were completely

26  unaware that Conseco Life intended to materially and suddenly increase the cost of

27  insurance charges beginning in policy year 21 of the Policies.

28

## FIRST CAUSE OF ACTION

### (Breach of Contract)

PLAINTIFF AND MEMBERS OF THE CLASS, FOR A
FIRST CAUSE OF ACTION AGAINST DEFENDANT
CONSECO LIFE FOR BREACH OF CONTRACT, ALLEGES:

61.  Plaintiff refers to the prior paragraphs of this complaint and incorporates those paragraphs as though set forth in full in this cause of action.

62.  At all relevant times, Plaintiff and members of the Class have paid to Defendant all premiums and charges due under the Policies as established at the inception of the Policies and they have performed all their obligations under the Policies.

63.  As alleged above, Defendant owed duties and obligations to Plaintiff and members of the Class under the Policies, among others, to refrain from increasing the cost of insurance charges, except as allowed under the terms of the Policies and to otherwise comply with the terms of the Policies.

64.  Defendant materially breached the terms and provisions of the Policies by increasing the cost of insurance charges respecting the Policies in order to increase premium revenue when the increase in cost did not relate to any change in the expectation as to the future mortality experience of Defendant, but was solely related to the interest of Defendant in increasing its premium income in order to generate additional revenue and/or force policyholders to surrender (cancel) their insurance policies.  Defendant did not give adequate notice or explanation of this increase to Plaintiff and members of the Class and Defendant attempted to conceal the intended dramatic increase in cost of insurance charges respecting the Policies.

65.  This change in the cost of insurance charge is a flagrant and fundamental violation of the express terms and conditions of the Policies.  By so suddenly and dramatically increasing the cost of insurance charges beginning in

19

1  policy year 21, Defendant has effectively conceded that the increase is not and
2  could not possibly be based on its expectations as to future mortality experience.
3  By increasing the cost, and thereby requiring substantial additional premiums from
4  Plaintiff and members of the Class, Defendant has materially breached the Policies.

5      66.    By demanding more premiums from Plaintiff and members of the
6  Class and increasing the cost of insurance charges, Defendant has materially
7  breached the Policies.

8      67.    As a direct and proximate result of Defendant Conseco Life's conduct
9  and material breach of the Policies, Plaintiff and members of the Class have
10  suffered damages under the Policies in an amount to be determined according to
11  proof at the time of trial.  In addition, respecting future costs of insurance charges
12  under the Policies, Plaintiff and members of the Class seek an injunction against
13  Defendant requiring it in the future to charge only the cost of insurance explicitly
14  permitted under the terms of the Policies and to otherwise comply strictly with the
15  terms of the Policies.

16                          SECOND CAUSE OF ACTION
17                  (Injunctive and Restitutionary Relief Pursuant to
18            Business & Professions Code section 17200, et seq.)
19      PLAINTIFF, ON BEHALF OF THE GENERAL PUBLIC, FOR A
20  SECOND CAUSE OF ACTION AGAINST DEFENDANT CONSECO LIFE
21  FOR INJUNCTIVE AND RESTITUTIONARY RELIEF UNDER BUSINESS
22  AND PROFESSIONS CODE SECTION 17200, ET SEQ., ALLEGES:

23      68.    Plaintiff refers to the prior paragraphs of this complaint and
24  incorporates those paragraphs as though set forth in full in this cause of action.

25      69.    Defendant Conseco Life committed acts of unfair competition as
26  defined by Business and Professions Code section 17200, et seq., by engaging in
27  the following practices, among others:

28          a.    Marketing and selling the Policies on the premise that they were a

                                        20

1   solid and good insurance product which would provide a certain death

2   benefit for a certain cost and subsequently taking steps to prevent

3   policyholders from receiving the promised benefits from those

4   policies by materially and unlawfully increasing the cost of the

5   Policies;

6   b.   Artificially adjusting the cost of insurance rates for the Policies on

7   grounds unrelated to the Defendant's expectation as to future

8   mortality experience in order to increase premiums and/or force its

9   insureds to surrender (cancel) their policies, all of which was, and is,

10   contrary to, and precluded by, the express terms of the Policies.  The

11   cost of insurance charges were increased so that Defendant could

12   reduce the size of an unprofitable block of insurance policies and to

13   cause many of the policyholders to surrender their insurance policies.

14   Plaintiff is informed and believes and thereon alleges Defendant

15   breached its duties under the Policies by improperly increasing the

16   cost of insurance charges in order to gain or retain an unfair

17   competitive advantage over other life insurers;

18   c.   After the sale of the Policies, continuing to send annual reports, policy

19   servicing statements, illustrations and other documents and

20   correspondence to Plaintiff and members of the Class without

21   disclosing that there would be sudden and dramatic increases in the

22   cost of insurance charges beginning in policy year 21; and

23   d.   Concealing from its policyholders the material increase in cost of

24   insurance charges and not providing any advance warning that it

25   intended to massively and suddenly increase the cost of insurance

26   charges beginning in policy year 21.

27   70.   Plaintiff is informed and believes and on that basis alleges that the

28   unlawful practices alleged above are continuing in nature and they are widespread

21

1 | practices engaged in by Defendant.

2 |     71.   On behalf of the general public, Plaintiff respectfully request that the
3 | Court issue an injunction against Defendant preliminarily and permanently
4 | enjoining it from continuing to engage in the unlawful conduct and preventing
5 | Defendant from collecting the increased cost of insurance charges in violation of
6 | the Policies.

7 |     72.   On behalf of the general public, Plaintiff respectfully requests this
8 | Court to order restitution to be paid by Defendant to its insureds for premium and
9 | other amounts wrongfully required, obtained and collected as the result of the
10 | wrongful and unlawful increase in the cost of insurance charges based on the
11 | wrongful increase in the cost of insurance charges that was not based on
12 | expectations as to future mortality experience.

13 |     73.   Plaintiff respectfully requests an award of attorneys' fees as the
14 | prevailing party in her request for injunctive relief against Defendant.

15 | <div align="center">THIRD CAUSE OF ACTION</div>
16 | <div align="center">(For Declaratory Relief)</div>
17 | <div align="center">PLAINTIFF AND MEMBERS OF THE CLASS, FOR A</div>
18 | <div align="center">THIRD CAUSE OF ACTION AGAINST DEFENDANT</div>
19 | <div align="center">CONSECO LIFE FOR DECLARATORY RELIEF, ALLEGES:</div>

20 |     74.   Plaintiff refers to the prior paragraphs of this complaint and
21 | incorporates those paragraphs as though set forth in full in this cause of action.

22 |     75.   An actual controversy has arisen and now exists between Plaintiff and
23 | the members of the Class, on one hand, and Defendant, on the other hand,
24 | concerning the respective rights and duties of the parties under the Policies.

25 |     76.   Defendant contends that it has lawfully and appropriately increased
26 | the cost of insurance charges respecting the Policies, appropriately collected (or
27 | will collect) the increased cost of insurance charges, and that they are permitted to
28 | continue to collect these charges in the future for the duration of the Policies. On

1  the other hand, Plaintiff and members of the Class maintain that Defendant have
2  inappropriately and unlawfully, in material breach of the Policies, increased the
3  cost of insurance charges not based on its expectations as to future mortality
4  experience as required by the explicit language of the Policies and in violation of
5  the prior adjudications of this Court rendered in the *Rosenbaum* Action.

6       77.     Under these circumstances, the parties' desire a declaration as to
7  their respective rights under the Policies and the Plaintiff requests that Court
8  declare that the cost of insurance increases at issue are unlawful and in material
9  breach of the Policies so that future controversies under the Policies may be
10  avoided.

11       WHEREFORE, Plaintiff and members of the Class pray for judgment
12  providing:

13       1.     Injunctive relief to preliminarily and permanently enjoin Defendant,
14  its representatives, and all others acting with it or on its behalf:

15       a.     From changing the cost of insurance and the attendant cost of
16              insurance charges, other than for expectations as to future mortality
17              experience, respecting the Policies; and

18       b.     From increasing the cost of insurance charges for the Policies and
19              requiring those charges to be returned to the levels that existed prior to
20              the unlawful increases imposed by Defendant.

21       2.     Injunctive relief requiring Defendant, its representatives, and all
22  others acting with it or on its behalf to reinstate any policyholder whose Policy was
23  cancelled or surrendered as a result of the intended unlawful cost of insurance
24  increases.

25       3.     Incidental or other monetary relief in the form of repayments to
26  Plaintiff and members of the Class of all overcharges resulting from the cost of
27  insurance increases complained of herein and/or payment of such amounts into the
28  accumulation accounts of the Policies.

1       4.    Alternatively, general damages, consequential damages, and other

2   incidental damages in a sum to be determined at the time of trial.

3       5.    Restitutionary relief requiring Defendant to disgorge and divest all

4   money received from policyholders as a result of, or caused by, the artificial and

5   sham increase in the cost of insurance (mortality) charges.

6       6.    A declaration that the increases in cost of insurance charges are in

7   material breach of the Policies and that Defendant must determine the cost of

8   insurance charges as explicitly set forth in the Policies.

9       7.    Attorneys' fees expended and incurred in recovery of benefits and

10   enforcement of the terms of the Policies against Defendant in a sum to be

11   determined at the time of trial.

12       8.    Costs of suit incurred herein.

13       9.    An award of prejudgment and post-judgment interest.

14       10.    Such other and further relief as deemed appropriate by this Court.

15

16   Dated: March 3, 2008          LAW OFFICES OF TIMOTHY P. DILLON

17

18                       By:  _____

19                           Timothy P. Dillon

20

21   Dated: March 3, 2008          BONNETT, FAIRBOURN, FRIEDMAN &
                                  BALINT, P.C.

22

23                       By:  _____

24                           Andrew S. Friedman

25                       Attorneys for Plaintiffs

26

27

28

1

## DEMAND FOR JURY TRIAL

2

3      Plaintiff hereby demands a jury trial.

4

Dated: March 3, 2008                 LAW OFFICES OF TIMOTHY P. DILLON

5

6                                    By: _____

7                                          Timothy P. Dillon

8

9  Dated: March 3, 2008              BONNETT, FAIRBOURN, FRIEDMAN &

10                                   BALINT, P.C.

11

12                                   By: _____

                                           Andrew S. Friedman

13
                                     Attorneys for Plaintiffs
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

# MASSACHUSETTS   GENERAL   LIFE

### INSURANCE COMPANY
### BOSTON, MASSACHUSETTS

## A STOCK COMPANY/HEREINAFTER CALLED THE COMPANY

Administrative Offices: 7887 E. Belleview Avenue/ Englewood, CO 80111
(800) 525-7662

This policy is a legal contract between the Company and the owner.

## READ YOUR POLICY CAREFULLY.

The Company will pay the proceeds as defined herein to the owner on the maturity date if the insured is living on that date. Upon receipt by the Company at its Administrative Offices of due proof that the insured died before the maturity date and while this policy was in force, the Company will immediately pay the proceeds to the beneficiary.

All payments are subject to all of the provisions of this and the following pages of this policy signed on the date of issue at its Administrative Offices, Englewood, Colorado. This policy is issued in consideration of the application and payment of the initial premium.

## NOTICE OF 20 DAY RIGHT TO EXAMINE THE POLICY

This policy may be cancelled by delivering or mailing the policy to Massachusetts General Life Insurance Company, 7887 East Belleview Avenue, Englewood, Colorado 80111, or to the insurance agent through whom it was effected before midnight of the twentieth day after receipt of such policy by the applicant. Upon such delivery or mailing, the policy shall be void from the beginning. Notice given by mail and return of the policy or contract by mail are effective on being postmarked, properly addressed and postage prepaid. The Company must return all payments made for this policy within ten days after it receives notice of cancellation and the returned policy.

*Robert P. T Epperson*
Secretary

*Regn ElDunker*
President

## FLEXIBLE PREMIUM ADJUSTABLE TERM TO AGE 100 LIFE INSURANCE POLICY

### ADJUSTABLE DEATH BENEFIT.
PROCEEDS PAYABLE UPON DEATH OF INSURED PRIOR TO THE MATURITY DATE.
FLEXIBLE PREMIUMS PAYABLE DURING THE LIFETIME OF THE INSURED UNTIL THE
MATURITY DATE. NONPARTICIPATING. NO DIVIDENDS APPLICABLE.

UNL-91

A-26

## ALPHABETICAL GUIDE

Age .................................................................................. 14
Amount and Frequency ........................................ 6 – 7
Annual Report .............................................................. 15
Assignment ...................................................................... 6
Basis of Computation ............................................... 10
Beneficiary ....................................................................... 6
Cash Value ........................................................................ 9
Cash Surrender Value ................................................. 9
Change in Death Benefit Option ........................... 8
Change in Specified Amount .................................... 8
Continuation of Insurance ..................................... 10
Cost of Insurance .......................................................... 9
Cost of Insurance Rates ............................................ 9
Date of Issue ............................................................. 3, 15
Death Benefit .................................................................. 7
Death of Beneficiary .................................................... 6
Debt ................................................................................... 10
Effective Date of Coverage ..................................... 15
Elections, Designations,
    Changes and Requests ....................................... 15
Entire Contract ........................................................... 14
Error in Age or Sex ................................................... 14
Expense Charges ............................................................ 5
Grace Period .................................................................... 7
Incontestability ........................................................... 14
Initial Premium ............................................................. 6
Initial Specified Amount ........................................... 3
Interest Credits .......................................................... 10
Loan Interest ........................................................ 10 – 11

Loan Value ...................................................................... 10
Maturity Date ............................................................... 15
Monthly Deduction ...................................................... 9
Nonparticipating .......................................................... 15
Owner ................................................................................. 6
Owner and Beneficiary Change ............................... 6
Partial Withdrawals .................................................... 9
Payment of Proceeds ................................................. 14
Planned Periodic Premium ........................................ 6
Policy Loan .................................................................... 10
Premium Class ............................................................. 14
Proceeds ......................................................................... 14
Projection of Benefits and Values ...................... 15
Reinstatement ................................................................. 7
Repayment ..................................................................... 11
Rider Cost of Insurance Schedule ........................ 3
Simultaneous Death ..................................................... 6
Suicide Exclusion ........................................................ 14
Surrender ......................................................................... 9
Surrender Charge ......................................................... 9
Table of Minimum Death Benefits ........................ 5
Table of Guaranteed Maximum
    Monthly Cost of Insurance
    Rates per $1,000 .................................................. 4
Table of Surrender Charges ..................................... 5
Termination ................................................................... 15
Termination of Policy ............................................... 11
Unscheduled Premiums ............................................... 7
Where Payable ............................................................... 6

## POLICY PROVISIONS

Death Benefit .................................................................. 7
General ..................................................................... 14 – 15
Interest Credits ........................................................... 10
Loan ............................................................................. 8 – 10
Nonforfeiture ........................................................ 8 – 10
Ownership, Beneficiary and
    Assignment ................................................................. 6

Policy Change ................................................................. 8
Premium Payments, Grace Period
    and Reinstatement ........................................... 6 – 7
Settlement Options ............................................ 11 – 14

## OPTIONAL BENEFITS

If you have purchased any optional benefits, they will be listed in the Rider Cost of Insurance Schedule section of a Policy Data Page and the benefit will be inserted in the contract.

UNL-91

2

A-27

POLICY DATA PAGE

| | |
|---|---|
| INSURED   RUTH S YUE | 1090236101   POLICY NUMBER |
| AGE   70   FEMALE | SEPTEMBER 26, 1995   DATE OF ISSUE |
| PLAN   FLEX. PREM. ADJ. LIFE | $400,000   INITIAL SPECIFIED AMOUNT |
| PREMIUM CLASS   SELECT NON SMOKER | $7,890.00   PLANNED PERIODIC PREMIUM |
| DEATH BENEFIT OPTION   A | $7,890.00   INITIAL PREMIUM |
| MATURITY DATE   SEPTEMBER 26, 2025 | ANNUAL   PREMIUM FREQUENCY |

MONTHLY COST OF INSURANCE SCHEDULE

| FORM NUMBER | BENEFIT DESCRIPTION | INITIAL SPECIFIED AMOUNT | MONTHLY COST OF INSURANCE | FIRST MONTHLY DEDUCTION | LAST MONTHLY DEDUCTION |
|---|---|---|---|---|---|
| UNL-91 | FLEX. PREM. ADJ. TERM LIFE INSURANCE TO AGE 100 | $400,000 | SEE PAGE 4 | 09/26/95 | 08/26/25 |

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY
ADMINISTRATIVE OFFICE: 7887 EAST BELLEVIEW AVENUE, ENGLEWOOD, CO   80111

A-28

## POLICY DATA PAGE

TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES PER $1,000

| ATTAINED AGE | POLICY YEAR | RATE | ATTAINED AGE | POLICY YEAR | RATE |
|---|---|---|---|---|---|
| 70 | 1 | 0.8768 | 85 | 16 | 10.9306 |
| 71 | 2 | 0.8768 | 86 | 17 | 12.2389 |
| 72 | 3 | 0.8768 | 87 | 18 | 13.6543 |
| 73 | 4 | 0.8768 | 88 | 19 | 15.1838 |
| 74 | 5 | 0.8768 | 89 | 20 | 16.8317 |
| 75 | 6 | 3.4575 | 90 | 21 | 18.6490 |
| 76 | 7 | 3.8846 | 91 | 22 | 20.6664 |
| 77 | 8 | 4.3438 | 92 | 23 | 22.9970 |
| 78 | 9 | 4.8411 | 93 | 24 | 25.7925 |
| 79 | 10 | 5.3971 | 94 | 25 | 29.5778 |
| 80 | 11 | 6.0366 | 95 | 26 | 35.3585 |
| 81 | 12 | 6.7749 | 96 | 27 | 45.5264 |
| 82 | 13 | 7.6370 | 97 | 28 | 66.4471 |
| 83 | 14 | 8.6208 | 98 | 29 | 83.3333 |
| 84 | 15 | 9.7216 | 99 | 30 | 83.3333 |

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMIS-
SIONERS 1980 STANDARD ORDINARY FEMALE MORTALITY TABLE, AGE LAST
BIRTHDAY. ACTUAL MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED
BY THE COMPANY BASED ON ITS EXPECTATIONS AS TO FUTURE MORTALITY
EXPERIENCE. HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE
GREATER THAN THOSE SHOWN ABOVE.

BASED UPON THE MINIMUM GUARANTEED INTEREST RATES AND MAXIMUM COST OF
INSURANCE, THIS POLICY WILL REMAIN INFORCE UNTIL APRIL 26, 2001
PROVIDED: (1) THE PLANNED PERIODIC PREMIUM IS PAID EACH TIME WHEN
DUE; AND (2) NO CHANGES ARE MADE IN THE POLICY.

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY

A-29

## POLICY DATA PAGE
### (CONTINUED)

### TABLE OF MINIMUM DEATH BENEFITS

| ATTAINED<br>AGE | PERCENT OF<br>ACCUMULATION ACCOUNT | ATTAINED<br>AGE | PERCENT OF<br>ACCUMULATION ACCOUNT |
|---|---|---|---|
| 0-40 | 250% | 65 | 120% |
| 45 | 215% | 70 | 115% |
| 50 | 185% | 75 | 105% |
| 55 | 150% | 90 | 105% |
| 60 | 130% | 95 AND OVER | 100% |

FOR AGES NOT SHOWN, THE APPLICABLE PERCENTAGE WILL BE DETERMINED BY
INTERPOLATING BETWEEN THE AGES THAT ARE SHOWN.

### EXPENSE CHARGES

THERE IS A CHARGE OF $4.50 PER MONTH PER POLICY IN ALL POLICY YEARS.
THERE IS AN EXPENSE CHARGE EQUAL TO $0.54 PER MONTH PER $1,000 OF
INITIAL SPECIFIED AMOUNT IN ALL POLICY YEARS. THERE IS A PERCENTAGE
OF PREMIUM CHARGE IN ALL POLICY YEARS EQUAL TO 6.5% OF PREMIUMS PAID
TO THE COMPANY.

### TABLE OF SURRENDER CHARGES

| BEGINNING<br>YEAR | SURRENDER<br>CHARGE | BEGINNING<br>YEAR | SURRENDER<br>CHARGE |
|---|---|---|---|
| 1 | $ 1,915.20 | 9 | $ 1,596.00 |
| 2 | 1,915.20 | 10 | 1,516.20 |
| 3 | 1,915.20 | 11 | 1,396.52 |
| 4 | 1,915.20 | 12 | 1,197.00 |
| 5 | 1,915.20 | 13 | 798.00 |
| 6 | 1,835.40 | 14 | 399.00 |
| 7 | 1,755.60 | 15 AND OVER | NONE |
| 8 | 1,675.80 | | |

EACH PARTIAL WITHDRAWAL IS SUBJECT TO A $25.00 TRANSACTION CHARGE.   IN
ADDITION, A PRO RATA SURRENDER CHARGE WILL BE IMPOSED ON PARTIAL
WITHDRAWALS IF THE EFFECT OF SUCH PARTIAL WITHDRAWAL IS TO REDUCE THE
SPECIFIED AMOUNT.   THE AMOUNT OF THE PRO RATA SURRENDER CHARGE WILL BE
BASED UPON THE PERCENTAGE OF REDUCTION IN THE SPECIFIED AMOUNT.

NOTE:   AT SOME FUTURE TIME, THE NET ACCUMULATION ACCOUNT VALUE (CASH
        SURRENDER VALUE IF THERE IS DEBT) MAY NOT COVER THE NEXT
        MONTHLY DEDUCTION.   IN SUCH A SITUATION, THE POLICY WILL
        ENTER THE GRACE PERIOD AND WILL TERMINATE AT THE END OF
        THAT PERIOD IF SUFFICIENT PREMIUM TO COVER THE MONTHLY
        DEDUCTION IS NOT PAID.

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY

PAGE 5

A-30

## OWNER, BENEFICIARY AND ASSIGNMENT PROVISIONS

### OWNER

The owner means the owner set out in the application unless subsequently changed. During the insured's lifetime, the owner has the right to receive every benefit, exercise every right and enjoy every privilege granted by this policy. If the owner of this policy is a trust, proof of the existence of the trust must be furnished to the Company.

### BENEFICIARY

The beneficiary named in the application will receive the proceeds upon death of the insured unless the beneficiary has been changed by the owner.

If more than one person is named as beneficiary, the proceeds will be paid in equal shares to the surviving beneficiaries, unless otherwise provided.

If the beneficiary is "children," this means children born to or legally adopted by the insured.

### DEATH OF BENEFICIARY

If any beneficiary dies before the insured, that beneficiary's interest will pass to any surviving beneficiaries or contingent beneficiaries according to their respective interest.

If no beneficiary or contingent beneficiary survives the insured, the proceeds will be paid to the owner or the owner's estate.

### OWNER AND BENEFICIARY CHANGE

The owner may change the owner and the beneficiary at any time during the lifetime of the insured unless otherwise provided in a previous designation. Any change must be in written form satisfactory to the Company.

The change will take effect on the date the request was signed, but it will not apply to any payments made by the Company before the request was received and recorded by the Company.

### SIMULTANEOUS DEATH

If any beneficiary dies within 15 days after the insured but before due proof of the insured's death is received by the Company, the proceeds will be paid as if the beneficiary died before such insured.

### ASSIGNMENT

This policy may be assigned. No assignment will be recognized by the Company unless: (i) the original instrument or a certified copy is filed with the Company at its Administrative Offices; and (ii) the Company sends the owner an acknowledged copy. The Company will not be responsible for the validity of any assignment.

The claim of any assignee is subordinate to that of the Company, including any debt to the Company.

The rights of the beneficiary and owner are subject to the rights of the assignee.

## PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS

### INITIAL PREMIUM

The initial premium is the premium due on the date of issue of this policy. It is shown on a Policy Data Page.

### PLANNED PERIODIC PREMIUM

The planned periodic premium is shown on a Policy Data Page.

### WHERE PAYABLE

Premiums are payable in advance to the Company at its Administrative Offices. Premiums may be paid to an authorized representative of the Company upon delivery of a receipt signed by the President, Vice President, Secretary or Assistant Secretary.

### AMOUNT AND FREQUENCY

The owner may change the amount of planned periodic premium. The Company reserves the right to limit the amount of any increase.

The frequency of premium payment shown on a Policy Data Page will serve only as an indication of the owner's preference as to probable future frequency of payment.

The owner may change the frequency of planned periodic premium payment at any time. Each premium payment will be credited by the Company as described 'n the Interest Credits provision.

A check or draft given for all or any part of a premium, unless paid upon its presentation to the bank or person drawn on, shall not be considered as payment.

## UNSCHEDULED PREMIUMS

Additional premiums, but not less than $25.00, may be paid at any time before the maturity date. The Company reserves the right to limit the number and amount of additional premium payments.

Section 7702 of the Internal Revenue Code, as amended, limits the amount of premiums payable under this policy for the death benefit to qualify for exclusion from gross income. If a premium in excess of that premium limitation is received, it will be refunded to the owner.

When a change is made under the Policy Change provision, the premium limitation will be adjusted.

## GRACE PERIOD

A grace period of 61 days will be allowed to pay a premium that will cover the monthly deduction. If there is no debt, the grace period will begin on the monthly anniversary day on which the accumulation account will not cover the next monthly deduction. If there is any debt, the grace period will begin on the monthly anniversary day on which the cash surrender value will not cover the next monthly deduction. If payment is not made, the policy will lapse at the end of such period. The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. If the insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds. The policy will remain in force during the grace period, unless surrendered.

## REINSTATEMENT

Subject to meeting the following conditions, the policy may be reinstated during the lifetime of the insured and before the maturity date, unless it was surrendered for cash. The requirements for reinstatement are:

1. Evidence of insurability satisfactory to the Company must be submitted;

2. Premium sufficient to pay any past due monthly deductions at the end of the grace period must be paid;

3. Sufficient premium to keep the policy in force for two months at time of reinstatement must be paid; and

4. Any debt existing at the end of the grace period must be paid or reinstated.

Monthly deductions will not be due for the period of time between the end of the grace period and the date of reinstatement.

The effective date of reinstatement will be the date the application for reinstatement is approved by the Company.

Upon reinstatement, surrender charges, if any, will then be reinstated in the amount shown on a Policy Data Page for the policy year of lapse. Such surrender charges will be the same as if the policy had not lapsed.

The Incontestability section will apply if the policy has been in force for less than two years. If the policy has been in force for two years during the lifetime of the insured, the suicide exclusion will not apply and it will be contestable only as to statements made in the reinstatement application; and, only for a period of two years from the effective date of reinstatement.

## DEATH BENEFIT PROVISION

This policy will provide one of the following death benefits in determining the proceeds of the policy:

1. Option A. The death benefit will be the greater of:

   a. The specified amount on the date of death, or

   b. The accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

2. Option B. The death benefit will be the greater of:

   a. The accumulation account on the date of death, plus the specified amount on the date of death, or

   b. The accumulation account on the date of death multiplied by the applicable percentage at the insured's attained age as shown in the Table of Minimum Death Benefits on a Policy Data Page.

The death benefit option in effect on the date of issue is shown on a Policy Data Page.

UNL-91

7

A-32

# POLICY CHANGE PROVISIONS

## CHANGE IN SPECIFIED AMOUNT

At any time after the first policy year, upon written request, the specified amount may be changed, subject to the following conditions:

1. Specified Amount Decreases

   a. Any decrease will be effective on the monthly anniversary day on or next following receipt of the request by the Company. A decrease will be applied in the following order:

      1) First, against any increase in the specified amount (beginning with the most recent) and, then;

      2) Against the initial specified amount.

   b. The specified amount remaining in force after any requested decrease may not be less than $100,000.

   c. A pro rata surrender charge will be deducted from the accumulation account. Such pro rata charge will be calculated by: determining what percent of the initial specified amount is represented by the decrease; then applying that percentage to the original surrender charge as the pro rata surrender charge. Future surrender charges will be reduced by the same percentage as determined for each such decrease.

   d. The cash surrender value following the decrease must be greater than zero.

2. Specified Amount Increases

   a. Any increase approved by the Company will be effective on the date shown on a supplemental Policy Data Page.

   b. A supplemental application must be submitted.

   c. Evidence of insurability satisfactory to the Company must be submitted.

   d. The first month's cost of insurance must be paid.

## CHANGE IN DEATH BENEFIT OPTION

If the death benefit option is Option B, it may be changed to Option A. The new specified amount will be the death benefit as of the effective date of change. If the death benefit option is Option A, it may be changed to Option B. The new specified amount will be the death benefit less the value of the accumulation account as of the effective date of change.

The effective date of change will be the monthly anniversary day on or next following the date the Company receives the request for change.

The death benefit option may not be changed if:

1. Such change will result in a specified amount below $100,000; or,

2. After such change the policy would not qualify as a life insurance policy as defined at the date of change by Federal law or regulation.

No change may be made during the first policy year.

## NONFORFEITURE PROVISION

### ACCUMULATION ACCOUNT

The accumulation account on the date of issue will be the initial net premium. The accumulation account on any other monthly anniversary day will be calculated as (a) plus (b) plus (c) minus (d) minus (e) minus (f) where:

a. Accumulation account on the preceding monthly anniversary day;

b. One month's interest on item (a);

c. Net premiums paid since the preceding monthly anniversary day plus interest;

d. Partial withdrawals made since the preceding monthly anniversary day plus interest;

e. Monthly deduction for the month preceding the monthly anniversary day;

f. One month's interest on item (e).

On a day other than a monthly anniversary day, the accumulation account will be calculated as (a) plus (c) minus (d) minus (e) using the above definitions.

Net premium is the premium paid less the percentage of premium expense charge shown on a Policy Data Page.

UNL-91

8

A-33

## MONTHLY DEDUCTION
The monthly deduction for a policy month will be calculated as (a) plus (b) where:

a. Cost of insurance plus the cost of additional benefits provided by rider for the policy month; and

b. Monthly expense charges as shown on a Policy Data Page.

## COST OF INSURANCE
The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:

a. Monthly cost of insurance rate as described in the Cost of Insurance Rates section;

b. Insured's death benefit at the beginning of the policy month divided by 1.0036748;

c. Accumulation account at the beginning of the policy month.

Divide the result by $1,000.

The monthly cost of insurance for any rider is shown in the Cost of Insurance Schedule section of a Policy Data Page.

## COST OF INSURANCE RATES
The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue. Attained age means age on the prior policy anniversary. These rates are shown on a Policy Data Page.

Current monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience. Any change in such rates will apply uniformly to all members of the same age, sex and premium class. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates.

The monthly cost of insurance rate for any rider is shown or referred to in the Cost of Insurance Schedule section of a Policy Data Page.

## CASH VALUE
The cash value of this policy is:

1. Value of the accumulation account; less
2. Surrender charge.

## CASH SURRENDER VALUE
The cash surrender value of this policy is:

1. Cash value; less
2. Any debt.

## SURRENDER CHARGE
The surrender charge, which is shown on a Policy Data Page, is a charge against the accumulation account for surrender of the policy. It is not applicable to the surrender of a rider attached to the policy.

## SURRENDER
The owner may surrender this policy for its cash surrender value at any time before the policy terminates.

The Company may defer payment for not more than six months following receipt by the Company of the surrender request unless the surrender is to be applied to pay premiums on policies with the Company.

If a surrender is requested within 30 days after a policy anniversary, the cash surrender value will not be less than the cash surrender value on that anniversary, less any policy loans and partial withdrawals made on or after such anniversary.

## PARTIAL WITHDRAWALS
Partial withdrawals may be made from the accumulation account after this policy has been in force for one year. No more than one partial withdrawal may be made in any policy year. The minimum partial withdrawal which may be made is five hundred dollars. The amount which may be withdrawn may not exceed the cash surrender value. The specified amount will be reduced by the amount of the withdrawal if death benefit Option A is in effect.

If death benefit Option A is in effect, a pro rata surrender charge will be imposed against the accumulation account. The amount of this charge will be based upon the percentage of reduction in the specified amount, calculated by: determining what percent of the initial specified amount is represented by the partial withdrawal, then applying that percentage to the original surrender charge as the pro rata surrender charge. A $25.00 administrative charge will also be imposed.

Subject to evidence of insurability satisfactory to the Company, the specified amount will not be reduced by the amount of a partial withdrawal. In such a case, a charge of only twenty-five dollars ($25.00) will be imposed against the accumulation account.

If death benefit Option B is in effect, no pro rata surrender charge will be imposed; however, there will be a $25.00 administrative charge.

UNL-91

A-34

## CONTINUATION OF INSURANCE

If there is no debt, insurance will continue until the monthly anniversary day on which the accumulation account will not cover the next monthly deduction. If there is any debt, insurance will continue until the monthly anniversary day on which the cash surrender value will not cover the next monthly deduction.

This provision will not continue the policy beyond the maturity date or continue any rider beyond its termination date as provided in the rider.

## BASIS OF COMPUTATION

Minimum cash values are based on the Commissioners 1980 Standard Ordinary Mortality Table, Age Last Birthday with interest at 4.5% per year during the first twenty policy years and 3% per year thereafter.

The nonforfeiture values for this policy are equal to or greater than those required by law. The nonforfeiture values are calculated in accordance with the Standard Nonforfeiture Law. A detailed statement of the method of computing values has been filed with the insurance supervisory official of the state in which the application for this policy was signed.

## INTEREST CREDITS PROVISION

The interest rate to be credited monthly to the unborrowed portion of the accumulation account, during each calendar quarter, or portion thereof, shall be equal to the greater of (i) or (ii) where: (i) seventy-five percent (75%) of the interest rate payable on the third business day immediately preceding each January 1, April 1, July 1 and October 1, by the Chemical Bank, New York, New York, or its successor(s) on three (3) month time certificates of deposit when the effective annual rate is below 16%; eighty percent (80%) of the interest rate payable by the Chemical Bank will be credited when the certificates of deposit effective annual interest rate is 16% or greater; and (ii) the monthly rate equivalent to an effective annual rate of 4.5% during the first twenty policy years and 3% thereafter.

Interest in excess of the above rate may be credited to the accumulation account at the option of the Company based upon its expectations as to future interest rates.

Should the Chemical Bank or its successor(s) cease issuing three (3) month time certificates of deposit, the

Company reserves the right to substitute the three month certificate of deposit interest rate of another national banking institution of the Company's choice. Such substitution shall be subject to approval by the insurance regulatory authority of the state of residence of the owner, if required.

That portion of the accumulation account equal to an outstanding policy loan balance will earn interest at the rate of 4.5% per year during the first twenty policy years and 3% per year thereafter.

Premiums paid the Company will earn interest beginning on the first business day following the date of deposit of the premiums to the Company's account, but in no event later than the fifth business day immediately following receipt of such premiums at the Administrative Offices of the Company except for the initial premium. The initial premium will earn interest beginning on the first business day immediately following approval for the issuance of this policy unless the premium is paid later. In such case, the premium will be credited in the same manner for renewal premiums.

## LOAN PROVISION

### POLICY LOAN

The owner may obtain a loan at any time while this policy is in force and on the sole security thereof.

### LOAN VALUE

The loan value may not exceed the cash surrender value of the policy.

The Company may defer making a loan for not more than six months after application for the loan is made unless the loan is to pay premiums on policies with the Company.

### DEBT

Debt means all existing loans on this policy plus earned interest which has either accrued or been added.

UNL-91

### LOAN INTEREST

Loan interest will accrue from the date of each loan to the next policy anniversary date. Loan interest is payable in arrears at the end of each policy year. If interest is not paid when due, the amount of the interest will be added to the loan and bear interest on the same terms as the loan. The amount which may be borrowed is that amount which, with interest to the next policy anniversary, will equal the cash surrender value as of the next policy anniversary. Except as provided below, a loan secured by this policy will bear interest at the rate of 7% per year during the first twenty policy years and 5.5% thereafter.

A-35

After this policy has been in continuous force for a specified period, the owner will be eligible for a loan at a reduced interest rate of 4.5% per year until the end of the twentieth policy year and 3% per year thereafter. The specified period is:

a. Ten years if the insured's issue age is 55 or less;

b. Policy anniversary following the insured's 65th birthday if the insured's issue age is between 55 and 60; and

c. Five years if the insured's issue age is 60 or over.

This reduced loan interest rate is available subject to the following conditions:

1. The maximum amount which may be loaned during any one policy year at this reduced interest rate may not exceed the greater of:

a. 15% of the policy's cash surrender value at the end of the prior policy year; or

b. 15% of the cash surrender value on the policy anniversary immediately prior to the first loan exercised under this provision.

This amount may be loaned at this reduced rate in future policy years until there is no more cash surrender value.

2. Amounts loaned in excess of the amounts permitted under 1 above during any one policy year will bear interest at an interest rate of 7% per year during the first twenty policy years and 5.5% per year thereafter.

REPAYMENT
A loan may be repaid at any time while this policy is in force. A loan that exists at the end of the grace period may not be repaid unless this policy is reinstated.

TERMINATION OF POLICY
At any time the total debt equals or exceeds the cash value, the policy will terminate without value.

At least 31 days before the date the policy terminates, the Company will send a notice of its intention to void the policy. Notice will be mailed to the last known addresses of the owner and to any assignee of record.

## SETTLEMENT OPTIONS PROVISION

ELECTION OF OPTIONS
Any amount payable at the death of the insured or any other termination of this policy will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any settlement option.

Payment under a combination of options, or payment to joint or successive payees, or payment to a beneficiary that is not a natural person may be elected only with the consent of the Company.

Any election must be made in writing to the Company. The Company may require the policy for endorsement.

Election by Owner
During the lifetime of the insured, the owner may elect to have the proceeds paid under one of the payment options below.

Election by Beneficiary
At the time proceeds are payable to the beneficiary, the beneficiary may elect one of the payment options if proceeds are available to the beneficiary in a lump sum. The beneficiary has 12 months after payment becomes due to elect one of the following options.

PAYMENTS
Payments will be made monthly unless otherwise elected.

The Company has the right to change the frequency of payments in order to make a periodic payment of at least $25.00.

The option date under Options 1, 2 and 3 is the date the proceeds are payable, or the date of election, whichever is later. Interest under Options 4 and 5 will accrue from such date.

Under Option 3, proof of the age of the payee will be required at the time the first payment is due. The Company reserves the right to require proof that the payee is alive at the time of each payment.

CHANGE IN PAYMENTS
Partial withdrawal under Options 1 and 2 may not be made. All payments under Options 1 and 2 may be paid in one sum only with the consent of the Company. The value of any one sum payment will be the sum of any remaining guaranteed payments discounted at an interest rate of not less than 3% compounded annually.

Payments under Option 3 will be commuted only in event of death of the payee. Any payments that remain to be paid under Option 3 at the death of the payee will be paid in one sum. The value of the one sum payment will be the sum of the remaining guaranteed payments, discounted at an interest rate of not less than 3% compounded annually.

In the event additional interest is applicable to payments under Option 1, 2, or 3, any such payments, if paid in one sum, shall be discounted at an interest rate equal to that actually credited.

## WITHDRAWAL
The minimum proceeds that may be applied under Option 4 or 5 is $1,000. The payee does not have the right to withdraw any portion of the proceeds under Option 4. The minimum proceeds that may be applied or may remain after a withdrawal under Option 5 is $1,000. The minimum amount that may be withdrawn is $1,000. Proceeds less than this amount will be paid in a lump sum to the payee.

The Company may postpone payment of any amount to be withdrawn for not more than six months from the date the written request for withdrawal is received in the Company's Administrative Offices.

## ASSIGNMENT
The proceeds payable under one of these options may not be assigned.

## CLAIMS OF CREDITORS
To the extent permitted by law, proceeds will not be subject to any claims of a payee's creditors.

## ADDITIONAL INTEREST
Additional interest, if any, paid over the guaranteed 3%, will be in an amount and by a method determined by the Company.

## OPTION 1. EQUAL PAYMENTS FOR A GUARANTEED PERIOD
Equal monthly payments for the number of years elected, not to exceed 25 years. Payments will begin on the option date.

### Guaranteed Minimum Monthly Payment for each $1,000 of net proceeds

| Period Income Is Payable (Years) | Monthly Income | Period Income Is Payable (Years) | Monthly Income |
|---|---|---|---|
| 1 | $84.47 | 14 | $7.26 |
| 2 | 42.86 | 15 | 6.87 |
| 3 | 28.99 | 16 | 6.53 |
| 4 | 22.06 | 17 | 6.23 |
| 5 | 17.91 | 18 | 5.96 |
| 6 | 15.14 | 19 | 5.73 |
| 7 | 13.16 | 20 | 5.51 |
| 8 | 11.68 | 21 | 5.32 |
| 9 | 10.53 | 22 | 5.15 |
| 10 | 9.61 | 23 | 4.99 |
| 11 | 8.86 | 24 | 4.84 |
| 12 | 8.24 | 25 | 4.71 |
| 13 | 7.71 | | |

## OPTION 2. EQUAL PAYMENTS OF A SPECIFIED AMOUNT
Equal monthly payments of at least $4.71 per month for each $1,000 of proceeds. Payments will begin on the option date and will continue until the proceeds and interest at the rate of 3% compounded annually are exhausted.

## OPTION 3. EQUAL PAYMENTS FOR LIFE
Equal monthly payments for a guaranteed period of 10, 15 or 20 years as elected and for life thereafter as shown in the table on the following page.

OPTION 3
Amount of each monthly installment per $1,000 net proceeds.

| | | Monthly Income for Life with Guaranteed Period of: | | | | | Monthly Income for Life with Guaranteed Period of: | | |
|---|---|---|---|---|---|---|---|---|---|
| Age of Payee* Male | Female | 10 Years | 15 Years | 20 Years | | Age of Payee* Male | Female | 10 Years | 15 Years | 20 Years |
| 6 | 10 | $2.83 | $2.83 | $2.83 | 44 | 48 | $4.00 | $3.97 | $3.92 |
| 7 | 11 | 2.84 | 2.84 | 2.84 | 45 | 49 | 4.07 | 4.03 | 3.97 |
| 8 | 12 | 2.86 | 2.86 | 2.86 | 46 | 50 | 4.14 | 4.10 | 4.03 |
| 9 | 13 | 2.87 | 2.87 | 2.87 | 47 | 51 | 4.21 | 4.16 | 4.09 |
| 10 | 14 | 2.89 | 2.89 | 2.89 | 48 | 52 | 4.29 | 4.23 | 4.15 |
| 11 | 15 | 2.90 | 2.90 | 2.90 | 49 | 53 | 4.37 | 4.31 | 4.21 |
| 12 | 16 | 2.92 | 2.92 | 2.92 | 50 | 54 | 4.45 | 4.38 | 4.28 |
| 13 | 17 | 2.93 | 2.93 | 2.93 | 51 | 55 | 4.54 | 4.46 | 4.34 |
| 14 | 18 | 2.95 | 2.95 | 2.95 | 52 | 56 | 4.64 | 4.55 | 4.41 |
| 15 | 19 | 2.97 | 2.97 | 2.97 | 53 | 57 | 4.74 | 4.63 | 4.48 |
| 16 | 20 | 2.99 | 2.99 | 2.99 | 54 | 58 | 4.84 | 4.72 | 4.55 |
| 17 | 21 | 3.00 | 3.00 | 3.00 | 55 | 59 | 4.96 | 4.82 | 4.61 |
| 18 | 22 | 3.02 | 3.02 | 3.02 | 56 | 60 | 5.07 | 4.91 | 4.68 |
| 19 | 23 | 3.04 | 3.04 | 3.04 | 57 | 61 | 5.19 | 5.01 | 4.75 |
| 20 | 24 | 3.07 | 3.06 | 3.06 | 58 | 62 | 5.32 | 5.11 | 4.82 |
| 21 | 25 | 3.09 | 3.09 | 3.08 | 59 | 63 | 5.45 | 5.21 | 4.89 |
| 22 | 26 | 3.11 | 3.11 | 3.11 | 60 | 64 | 5.59 | 5.32 | 4.95 |
| 23 | 27 | 3.13 | 3.13 | 3.13 | 61 | 65 | 5.74 | 5.42 | 5.02 |
| 24 | 28 | 3.16 | 3.16 | 3.15 | 62 | 66 | 5.89 | 5.53 | 5.08 |
| 25 | 29 | 3.19 | 3.18 | 3.18 | 63 | 67 | 6.05 | 5.64 | 5.13 |
| 26 | 30 | 3.22 | 3.21 | 3.21 | 64 | 68 | 6.22 | 5.75 | 5.19 |
| 27 | 31 | 3.24 | 3.24 | 3.23 | 65 | 69 | 6.39 | 5.85 | 5.24 |
| 28 | 32 | 3.27 | 3.27 | 3.26 | 66 | 70 | 6.56 | 5.95 | 5.28 |
| 29 | 33 | 3.30 | 3.30 | 3.29 | 67 | 71 | 6.75 | 6.05 | 5.32 |
| 30 | 34 | 3.34 | 3.33 | 3.32 | 68 | 72 | 6.93 | 6.15 | 5.36 |
| 31 | 35 | 3.37 | 3.37 | 3.36 | 69 | 73 | 7.12 | 6.25 | 5.39 |
| 32 | 36 | 3.41 | 3.40 | 3.39 | 70 | 74 | 7.31 | 6.33 | 5.42 |
| 33 | 37 | 3.44 | 3.44 | 3.42 | 71 | 75 | 7.51 | 6.42 | 5.44 |
| 34 | 38 | 3.48 | 3.48 | 3.46 | 72 | 76 | 7.70 | 6.49 | 5.46 |
| 35 | 39 | 3.52 | 3.51 | 3.50 | 73 | 77 | 7.89 | 6.56 | 5.48 |
| 36 | 40 | 3.57 | 3.56 | 3.54 | 74 | 78 | 8.08 | 6.62 | 5.49 |
| 37 | 41 | 3.61 | 3.61 | 3.58 | 75 | 79 | 8.26 | 6.67 | 5.49 |
| 38 | 42 | 3.66 | 3.65 | 3.62 | 76 | 80 | 8.43 | 6.71 | 5.50 |
| 39 | 43 | 3.71 | 3.70 | 3.67 | 77 | 81 | 8.60 | 6.75 | 5.51 |
| 40 | 44 | 3.76 | 3.75 | 3.71 | 78 | 82 | 8.76 | 6.78 | 5.51 |
| 41 | 45 | 3.82 | 3.80 | 3.76 | 79 | 83 | 8.90 | 6.81 | 5.51 |
| 42 | 46 | 3.87 | 3.85 | 3.81 | 80 | 84 | 9.02 | 6.83 | 5.51 |
| 43 | 47 | 3.94 | 3.91 | 3.87 | | | | | |

*Age on the birthday coinciding with or next preceding the due date of the first installment. Ages not illustrated are available upon request.

UNL-91

13

A-38

## OPTION 4. PROCEEDS LEFT AT INTEREST - WITHDRAWALS NOT ALLOWED

The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1) Annually $30.00.
2) Semiannually $14.89.
3) Quarterly $7.42.
4) Monthly $2.47.

At the end of the period selected, the proceeds with accrued interest will be paid in one sum unless otherwise provided in the election.

## OPTION 5. PROCEEDS LEFT AT INTEREST - WITHDRAWALS ALLOWED

The proceeds may be left with the Company for a period of 1 to 25 years. Interest on the proceeds will be paid at the rate of 3% compounded annually. The interest may be left with the Company to accumulate or be paid at the following rate for each $1,000 of net proceeds.

1) Annually $30.00.
2) Semiannually $14.89.
3) Quarterly $7.42.
4) Monthly $2.47.

The payee may withdraw portions of the proceeds by request in writing to the Company. At the end of the specified period, any remaining proceeds with accrued interest will be paid in one sum.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

This policy, including any attached riders, and the attached copy of the application and any supplemental applications for additional coverage are the entire contract. This policy cannot be changed or any of its provisions waived, including any extension of time to pay premiums, except by the President, Vice President, Secretary or Assistant Secretary.

All statements made in an application are assumed, in the absence of fraud, to be representations and not warranties. No statement will be used to void this policy or defend against a claim unless it is contained in the application or a supplemental application.

Any changes, modifications, or waivers must be in writing. No agent has authority to waive a complete answer to any question on the application, pass on insurability, make or alter any contract or waive any of the Company's other rights or requirements.

### INCONTESTABILITY

This policy will be incontestable, in the absence of fraud, after it has been in force during the lifetime of the insured for two years from the date of issue except for nonpayment of premiums.

Any requested additional benefit or specified amount issued after the policy date will be incontestable only after such additional benefit has been in force for two years during the lifetime of the insured following the effective date of such additional coverage.

### PROCEEDS

Proceeds means the amount payable on the maturity date, or the surrender of this policy prior to the maturity date, or upon the death of the insured.

The proceeds payable on death will be the death benefit less any debt.

If the policy is surrendered the proceeds will be the cash surrender value. On the maturity date the proceeds will be the cash surrender value.

### PAYMENT OF PROCEEDS

The proceeds are subject first to any debt to the Company and then to the interest of any assignee of record. Payments to satisfy any debt to the Company and any assignee will be paid in one sum.

### PREMIUM CLASS

The insured's premium class is shown on a Policy Data Page.

### AGE

Age means age last birthday.

### ERROR IN AGE OR SEX

If the age or sex of the insured has been misstated, the proceeds payable will be that which the most recent monthly deduction would have purchased at the correct age and sex. No adjustment will be made in the cash surrender value.

### SUICIDE EXCLUSION

If the insured commits suicide while sane or insane within two years after the date of issue, the amount payable by the Company will be limited to the premiums paid prior to the insured's death less any debt, and less any partial withdrawals.

If the insured commits suicide while sane or insane within two years after the effective date of any requested additional coverage, the amount payable by the Company will be limited to premiums paid prior to the insured's death for such additional coverage less any debt and less any partial withdrawals.

UNL-91

14

## ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS

All elections, designations, changes, and requests must be in a written form satisfactory to the Company and become effective when received and approved by the Company at its Administrative Offices.

## NONPARTICIPATING

This is a nonparticipating policy. This policy will not share in any of the Company's profits or surplus earnings. The Company will not pay dividends on this policy. Any premium or factor changes are determined and redetermined prospectively. The Company will not recoup prior losses, if any, by means of premium or factor changes.

## MATURITY DATE

The maturity date is shown on a Policy Data Page. It is the date on which insurance coverage will terminate, no more premiums may be paid, and the cash surrender value is paid to the owner. It is possible that coverage will end prior to the maturity date if the premiums paid and interest credited are not sufficient to continue coverage to such date.

## ANNUAL REPORT

At least once a year, the Company will send the owner a report which shows premiums paid, expense charges, interest credited, mortality charges, outstanding loans, current cash value, cash surrender value, and all charges since the last report.

## PROJECTION OF BENEFITS AND VALUES

The Company will provide a projection of future death benefits and the value of the accumulation account at any time upon written request and payment of a service fee. The fee payable will be the one then in effect for this service. The projection will be based on:

1. Assumptions as to specified amounts, type of coverage option and future premium payments as may be specified by the owner; and

2. such other assumptions as are necessary and specified by the Company and/or the owner.

## EFFECTIVE DATE OF COVERAGE

The effective date of coverage under this policy is as follows:

1. The date of issue is the effective date for all coverage provided in the original application.

2. The effective date for any addition to coverage will be the monthly anniversary date on or next following the date the application for the addition is approved by the Company.

## TERMINATION

This policy will terminate when any one of the following events occur:

1. The owner requests that coverage terminate,

2. The insured dies,

3. The policy matures,

4. The grace period ends without payment of the required premiums,

5. The total debt equals or exceeds the cash value.

## DATE OF ISSUE

Policy years and policy anniversaries are computed from date of issue.

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY

BOSTON, MASSACHUSETTS

ENDORSEMENT

ANYTHING IN THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED TO THE CONTRARY NOTWITHSTANDING:

PROJECTION OF BENEFITS AND VALUES: THE COMPANY WILL PROVIDE A PROJECTION OF FUTURE BENEFITS AND THE VALUE OF THE ACCUMULATION ACCOUNT AT ANY TIME UPON WRITTEN REQUEST AND PAYMENT OF A SERVICE FEE, NOT TO EXCEED FIVE DOLLARS.

ATTACHED TO AND MADE A PART OF THE POLICY TO WHICH IT IS ATTACHED ON THE POLICY DATE OF ISSUE.

*Robert P. F Esperance*

SECRETARY

UN–86–CA

A-41

MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY
Boston, Massachusetts

APPLICATION AMENDMENT

PROPOSED INSURED:   RUTH S YUE          POLICY NUMBER:   1090236101

Please amend my application to Massachusetts General Life Insurance Company dated 07/14/95 as follows:

FACE AMOUNT TO READ   $400,000

I hereby agree that these changes shall be amended to, and form a part of, the original application and of any policy issued thereunder, and that insurance shall not be in force until a copy of this amendment and the entire first premium have been received by Massachusetts Life at its Home Office. I further understand that if I do not accept this amendment, I will then be entitled to return of any premium paid.

DATED AT _____ on _____ 19 _____
               City              State

_____          _____
          Applicant                                 Witness

_____
          Owner

AA-78                                                                    A-42

ASSACHUSETTS GENERAL LIFE
Insurance Company

## STATEMENT OF GOOD HEALTH AND INSURABILITY

### COMPLETED AS A CONDITION TO THE DELIVERY OR CHANGE OF

POLICY NO. _____ 1090236101 _____ ON THE LIFE OF _____ RUTH S YUE _____

I, the undersigned, hereby declare that I am in good health and that, since the date of my last examination (or Declaration of Insurability in Lieu of Examination) for insurance in Massachusetts General Life Insurance Company:

(1)   I have continued in good health.

(2)   I have not made an application for insurance which has been declined, postponed, or modified.

(3)   I have not consulted or been examined by a physician or practitioner, nor hospitalized within the past 90 days.

(4)   I have been actively at work on a full-time basis as of the date hereof, at least 20 hours per week, and have been actively at work for the past 90 days. ("Actively at work" means performing all normal duties of employment at customary place of employment with Employer.)

*If there are any exceptions to any of the above statements, give full details in the space provided and return this statement and policy to the Underwriting Department.*

*Exceptions:*

I hereby represent that to the best of my knowledge and belief all of the foregoing statements are true and correct and that I have fully stated all exceptions.

Dated at _____ this _____ day of _____, 19_____.

_____          _____
            Witness                              Signature of person to be insured

The insured should sign on the above line in all cases.

If this form is required in connection with an insurance policy applied for by a third party, the latter should sign below.

The undersigned certifies the above and foregoing is correct to the best of my knowledge and belief, and agrees to be bound thereby.

_____   _____          _____
        Witness                Date.            Signature of person applying for insurance
                                                    (if other than proposed insured)

SGH-MGL

A-43

**PART I APPLICATION FOR LIFE INSURANCE TO**   MASSACHUSETTS GENERAL LIFE Insurance Company    `* 1 0 9 0 2 3 6 1 0 1 *`

**1. Proposed Insured**
First Name: _Ruth_   Middle: _Seid_   Last: _Yue_

**2. Birth** Date mo / day / year: _____   Birth Place: _Portland, Oregon_

**3. Height** 5 Ft. 0 In.   Weight 105 Lbs.

**4. Social Security Number** _____

**5.** ☐ Male  ☑ Married   ☐ Widowed   ☐ Separated
☑ Female  ☐ Single   ☐ Divorced

**6. RESIDENCE:**
Street & No. _____
City _____
State ____ Zip Code ____ Years ____
Former Address (if less than five years at current address)
_____

**7. OCCUPATION** (If Proposed Insured is under 18, complete for Owner)
Duties _Pharmacist_
Employer _Kaiser Sunset - Permanente_
Address _4904 Sunset Blvd._
Zip _90027_   Years _35_
Occupations for past 5 years

**8a.** To whom shall premium notices be mailed?
Proposed Insured ☐  Owner ☑  Other _____
**b.** Where shall premium notices be mailed?  Residence ☑
Business ☐  Other ☐ _____

**9. Plan of Insurance**   Amount (if applicable)
_VALUE LIFE I_   $ _1,000,000_

**10.** Premiums Payable: Planned Premium (Including Riders) $ _____
☐ Annually   ☐ Semi-Annually   ☑ Quarterly
☐ Special Monthly   ☐ Govt. Allotment

**11. Additional Benefit Riders** (Proposed Insured)
☐ Waiver of Premium (see 13)
☐ ADB   ☐ GIO Option _____ units
☐ Return of Accumulation Account Rider (Lifetrend Series Only)
☐ Other _____

**12. Family Supplemental Benefits**
☐ _____ units of the Spouse Rider
☐ _____ units of the Family Insurance Rider
☐ $_____ Child Rider
☐ Payor Death Rider
☐ Payor Death or Disability Rider

**13. FLEX. PREMIUM** Adjustable Life Only (Universal Life)
☐ Option A: Level Death Benefit
☐ Option B: Increasing Death Benefit
☐ Waiver of "Cost of Insurance"
☐ Spouse Rider $_____
☐ Child Rider $_____
☐ Other _____

Details of "Yes" answers to question #16.
_4,16,130 ANNUAL PREMIUM_

**14.** If the sum of future premiums paid for proposed policy exceeds the IRS Premium Limitation, the excess premium should be:
☐ Applied to a Deferred Annuity Policy
☑ Refunded

**15. LIFE INSURANCE NOW IN FORCE** (if none, write none)

| Company | Amt. of Life Ins. | Amt. of Acc. Death | Year Issd. |
|---|---|---|---|
| _None_ | | | |
| | | | |
| | | | |
| | | | |
| | | | |

|  | Yes | No |
|---|---|---|
| **16a.** Do you now have any application for life, accident or health insurance or reinstatement of such insurance pending in any company? | ☐ | ☑ |
| **b.** Have you ever had insurance declined, postponed, rated or modified? | ☐ | ☑ |
| **c.** Do you intend to make any flights as a pilot, student pilot or crew member? (If yes, complete Aviation Questionnaire) | ☐ | ☑ |
| **d.** Have you, or do you intend to engage in any sport or activity such as auto or motorcycle racing, sky-diving or scuba diving? | ☐ | ☑ |
| **e.** Do you intend to replace or change any life insurance or annuity policy in connection with this application? | ☐ | ☑ |
| **17.** Have you smoked cigarettes in the past twelve months? If you now smoke, how much per day? _____ | ☐ | ☑ |

**18. OWNER:**
☐ Proposed Insured
☑ Other   Name _Celedonia Yue_   Relationship _daughter_
Address _____
☐ If the Proposed Insured is under age 18, the owner shall be

**19. BENEFICIARY** as to proceeds at death of Insured:
Primary   Name _Celedonia Yue_   Relationship _daughter_

Secondary, if no primary beneficiary is living:
☐ Lawful children of the Insured (including any named below)
☐ Children born of the marriage of the Insured and primary beneficiary (including any named below)
☑ _Deonna Yue_
_Andrea Yue_
Beneficiaries as to proceeds at death of any person other than the Insured shall be the Insured, unless otherwise specified.

**20. SPECIAL REQUESTS:** (Settlement options, policy data, alternates, APDF, etc.) ☐ Issue as Special Class (Extended Term Insurance not available)

**21.** Policy Loan Interest is to be paid in advance ☐, or arrears ☐; fixed ☐, or variable ☐. If options are not selected interest will be fixed and payable in advance.

Form L-APP-86

HOME OFFICE USE

A-44

MASSACHUSETTS GENERAL LIFE Insurance Company

**PART II APPLICATION**
**FOR LIFE INSURANCE**                    NON MEDICAL AND FAMILY APPLICATION

Proposed insured  *Ruth Seid Yue*

2. Persons proposed for Insurance (Include only Proposed Insured's spouse and/or the Proposed Insured's unmarried children, including legally adopted children and stepchildren who have not attained their 21st birthday and are dependent on the Insured or the Payor)

| Name | Relationship to Insured | Date of Birth | Place of Birth | Ht. | Wt. | Insurance In Force or Pending |
|------|-------------------------|---------------|----------------|-----|-----|-------------------------------|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

3a. Name and Address of Personal Physician:
*K. Fogarty*
*4930 Sunset Blvd*
*Los Angeles CA 90027*

b. Reason and date consulted:
*9\93 diarrhea*

**Declaration of Insurability**                                    Yes  No

| | Yes | No |
|---|---|---|
| 5. Does any person named above intend to replace or change a life insurance or annuity policy in connection with this application? | ☐ | ☑ |
| 6. Has any person named above ever: | | |
| a. had kidney disease, nephritis, albumin, blood, pus or sugar in the urine? | ☐ | ☑ |
| b. used on a regular basis: heroin, morphine, other narcotics, marijuana, cocaine, barbiturates, amphetamines, or hallucinogenic drugs; or alcohol? | ☐ | ☑ |
| c. had any bone or joint disorder or disease, tumor, cancer, nervousness, syphilis, tuberculosis? | ☐ | ☑ |
|    had anemia, leukemia or other disease of the blood? | ☐ | ☑ |

| | Yes | No |
|---|---|---|
| e. had any diabetes, gall bladder trouble, liver or genito-urinary disorder, ulcers or other digestive disturbance? | ☐ | ☑ |
| f. had any heart disease, chest pain, stroke, abnormal blood pressure, hernia, mental trouble, thyroid disturbance or lung trouble? | ☐ | ☑ |
| g. been a patient in or advised to enter a hospital, sanatorium or other institution for observation, rest, diagnosis, treatment or any operation? | ☐ | ☑ |
| h. had any X-rays, electrocardiograms, blood or other medical tests or surgical operations? | ☐ | ☑ |
| i. had any known indication of any disease, condition or other physical disorder or defect not mentioned? | ☐ | ☑ |

Details of "Yes" answers. (Identify Question Number and Individual and Circle Applicable Items; Include diagnosis, dates, duration and names and addresses of all attending physicians and medical facilities.)

_____

_____

_____

I/We hereby represent that to the best of my/our knowledge and belief all statements and answers as written or printed herein are full, complete and true. I/We agree that they shall form part of this application consisting of Parts I and II and become a part of any contract of insurance issued on such application. I/We understand that all statements and answers given herein are material and will be relied upon by the Company as being complete and true in determining whether I/we qualify for the plan of insurance applied for. I/We hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance company, the Medical Information Bureau, or other organization, institute or person that has any records or knowledge of the health of any proposed insured, to give to Massachusetts General Life Insurance Company or its Reinsurers any such information. A photographic copy of this authorization shall be as valid as the original.

I/We understand and agree: (1) that if the full first premium accompanies this application, the coverage (not to exceed $350,000) applied for becomes effective according to the terms and conditions of the conditional receipt; (2) that if a signed authorization for third party payment which is not accompanied by the full first premium is tendered with the application, coverage shall not be effective until the requested effective date entered on the application and receipt by the Company of the full first premium; (3) that if neither the full first premium nor a signed authorization for third party payment is tendered with the application, no insurance shall take effect unless and until a policy has been delivered to and received and accepted by me and the full first premium paid during the lifetime and insurability of proposed insureds.

The Company has the right to accept or reject this application or to offer coverage at a different rate. I further agree that any policy issued based on this application shall constitute a ratification of additions or corrections made by the Company and noted in the space "Home Office Use". Any change in amount, age at issue, classification, plan of insurance or benefits shall be made only with my written consent in those states where such consent is required.

If the premium for this application is prepaid, I acknowledge possession of the receipt contained herein, and have read the Terms and Conditions of coverage and declare that I understand and agree to those terms and conditions.

$ ___0___ deposit made with this application signed at *Los Angeles* , *CA* on *7 / 14 / 95*

City          State          Month  Day  Year

*Ruth Seid Yue*

Signature of Spouse if proposed for insurance                    Signature of Proposed Insured

Agent Replacement Question: Will this coverage replace another insurance or annuity policy? ___ Yes ☑ No.

*Michele M Kim*                                              *Caledonia X Yue*

Signature of Witness (Licensed Agent must witness where required by law)   Signature of Owner if other than Proposed Insured

A-45

# 109636101   326

Declarations to Medical Examiner or to Agent, if examination is not required, in continuation of and as a part of my application to the
**MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY**                                                   Part III

Proposed Insured  Ruth    S.    Yue     Birth Date  09 . 27 . 24
                  First Name   Middle Initial   Last Name          Month  Day  Year

1. a. Name and address of your personal physician? Katherine Fogarty MD
      (If none, so state)
   b. Date and reason last consulted? 1993/Annual phys Kaiser Permanente
   c. What treatment was given or medication prescribed? (Emoti) 4950 Sunset Blvd

| 2. Have you ever been treated for or ever had any known indication of: | Yes | No | Details of "Yes" answers. (Identify question number, circle applicable items: include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.) |
|---|---|---|---|
| a. Disorder of eyes, ears, nose or throat? | ☐ | ☒ | |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ | |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disease? | ☐ | ☒ | MR # 2182368 |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ | |
| e. Jaundice, intestinal bleeding; ulcer, hernia, appendicitis, colitis diverticulitis, hemorrhoids, recurrent indigestion or other disorder of the stomach, intestines, liver, or gallbladder? | ☐ | ☒ | |
| f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? | ☐ | ☒ | |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ | |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back or joints? | ☐ | ☒ | |
| i. Deformity, lameness or amputation? | ☐ | ☒ | |
| j. Disorder of skin, lymph glands, cyst, tumor or cancer? | ☐ | ☒ | |
| k. Allergies; anemia or other disorder of the blood? | ☐ | ☒ | |
| l. Excessive use of alcohol, tobacco or any habit-forming drugs? | ☐ | ☒ | |
| 3. Are you now under observation or taking treatment? | ☐ | ☒ | |
| 4. Have you had any change in weight in the past year? | ☐ | ☒ | |
| 5. Other than above, have you within the past 5 years: | | | |
| a. Had any mental or physical disorder not listed above? | ☐ | ☒ | |
| b. Had a checkup, consultation, illness, injury or surgery? | ☐ | ☒ | |
| c. Been a patient in a hospital, clinic, sanatorium or other medical facility? | ☐ | ☒ | |
| d. Had electrocardiogram, X-ray or other diagnostic test? | ☐ | ☒ | |
| e. Been advised to have any diagnostic test, hospitalization or surgery which was not completed? | ☐ | ☒ | |
| 6. Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☒ | |
| 7. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☒ | |
| 8. Family history of tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? | ☐ | ☒ | |

| | Age if Living? | Cause of Death? | Age At Death? |
|---|---|---|---|
| Father | | | |
| Mother | | unk . | 60t |
| Brothers & Sisters | | Old Age | 80t |
| No. Living ___ | | | |
| No. Dead ___ | | | |

9. a. Have you ever had any disorder of menstruation, pregnancy or of the reproductive organs or breasts? ☐ ☒
   b. To the best of your knowledge and belief, are you pregnant? ☐ ☒

TO THE BEST OF MY KNOWLEDGE AND BELIEF I HEREBY DECLARE that all statements and answers to the above and those I have made in Part I, are complete and true, and I agree that they shall form a part of the contract of insurance applied for. I hereby authorize any physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance company, the Medical Information Bureau, or other organization or person that has any records or knowledge of me or my health, to give the Massachusetts General Life Insurance Company or its Reinsurers a photographic copy of this authorization shall be as valid as the original.

Dated this  10th  day of  August  19 95        X Ruth Seidt

Witness _____        (The name to be signed in full) Proposed Insured's Signature or Person Having
        Medical Examiner or Agent—Cross out one        Custody of Proposed Insured

A-46

EXHIBIT "B"

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).



ENTERED
CLERK, U.S. DISTRICT COURT

MAR - 3 1994

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY



FILED

MAR 1 1994

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES ROSENBAUM,

        Plaintiff,

        v.

PHILADELPHIA LIFE INSURANCE
COMPANY; MASSACHUSETTS GENERAL
LIFE INSURANCE COMPANY; LIFE
PARTNERS GROUP; JAMES BRENNAN
and DOES 1 through 100, inclusive,

        Defendants.

CASE NO. CV 93-0834 MRP

ORDER

Plaintiff James Rosenbaum's ("Rosenbaum") motion for partial summary judgment, and defendants Philadelphia Life Insurance Company ("Philadelphia") and Massachusetts General Life Insurance Company's (collectively the "Companies" or "defendants") motion for summary judgment and/or specifying facts to be without substantial controversy, and motion for summary adjudication came on for hearing on February 7, 1994. After considering the parties' papers and the arguments of counsel, and having rendered its decision in accordance with the Statement of Uncontroverted Facts and Conclusions of Law,

IT IS HEREBY ORDERED that:

1. Rosenbaum's motion for partial summary judgment on the first claim for breach of contract is granted. Philadelphia breached its flexible premium universal life insurance policies (the "Flexible

B-47

1  Policy") with plaintiff by increasing the cost of insurance for a
2  reason other than a change in Philadelphia's expectations as to future
3  mortality experience.  The Court will set a hearing to determine which
4  Flexible Policies held by Rosenbaum were affected by the increase in
5  cost of insurance, and the damages available on those Flexible
6  Policies.
7      2.  Rosenbaum's motion for partial summary judgment that
8  Philadelphia breached its Spectra policies with Rosenbaum by failing
9  to give proper notice of the default in payment on those policies is
10  denied.  The Spectra policies were not affected by the increase in
11  cost of insurance, and therefore are not at issue in this lawsuit.
12  Rosenbaum may not recover damages on the Spectra policies.
13      3.  Rosenbaum's motion for partial summary judgment that
14  defendants engaged in an unfair business practice in violation of
15  California Business and Professions Code § 17200 is denied.
16      4.  Philadelphia's motion for summary judgment with respect to
17  the first claim for breach of contract is denied.
18      5.  Philadelphia's motion for summary judgment with respect to
19  the second claim for breach of the implied covenant of good faith and
20  fair dealing is denied.
21      6.  The Companies' motion for summary judgment with respect to
22  the third claim for violation of the California Business and
23  Professions Code § 17200 is denied.
24      7.  On the first claim, Rosenbaum is entitled to breach of
25  contract damages as to the Flexible Policies held by him on which the
26  cost of insurance was increased by the DAC tax.
27      8.  The following facts are not in controversy:
28

B-48

1       a.   By stipulation of the parties, Rosenbaum is not seeking

2  recovery for loss of commissions, loss of earnings or loss of earning

3  capacity on his first or second claim.

4       b.   By stipulation of the parties, Rosenbaum is not seeking

5  recovery for anxiety, worry, and mental and emotional distress on his

6  second claim.

7       c.   By stipulation of the parties, Rosenbaum is not seeking

8  recovery on his second claim for damage to his reputation.

9  DATED: *March 1, 1994*

10                         Mariana R. Pfaelzer

11                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


CONSTITUTES NOTICE OF ENTRY
REQUIRED BY FRCP, RULE 77(d).

ENTERED
CLERK, U.S. DISTRICT COURT

MAR - 3 1994

CENTRAL DISTRICT OF CALIFORNIA
BY                                DEPUTY



FILED

MAR 1  1994

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES ROSENBAUM,                          ) CASE NO. CV 93-0834 MRP
                                          )
                Plaintiff,                ) STATEMENT OF UNCONTROVERTED
                                          ) FACTS AND CONCLUSIONS OF LAW
          v.                              )
                                          )
PHILADELPHIA LIFE INSURANCE               )
COMPANY; MASSACHUSETTS GENERAL            )
LIFE INSURANCE COMPANY; LIFE              )
PARTNERS GROUP; JAMES BRENNAN             )
and DOES 1 through 100, inclusive,        )
                                         -)
                Defendants.               )
                                          )

     Plaintiff James Rosenbaum's ("Rosenbaum") motion for partial

summary judgment, and defendants Philadelphia Life Insurance Company

("Philadelphia") and Massachusetts General Life Insurance Company's

(collectively the "Companies" or "defendants") motion for summary

judgment and/or specifying facts to be without substantial

controversy, and motion for summary adjudication came on for hearing

on February 7, 1994.  After considering the parties' papers and the

arguments of counsel, the Court determines that the following

uncontroverted facts and conclusions of law have been established.

<u>UNCONTROVERTED FACTS</u>

1.   Rosenbaum purchased a number of flexible premium universal life insurance policies (the "Flexible Policy") issued by Philadelphia Life Insurance Company ("Philadelphia").

2.   A Flexible Policy allows a policyholder some discretion over the amount and timing of premiums.  Premiums above the minimum required to keep the Flexible Policy in force go to an accumulation account which earns "credited interest" at "credited interest rates" for the policyholder.  The Flexible Policy may be adjusted for changes in the applicable credited interest rate on the accumulation account, but may not fall below 4.5%.  The cost of insurance may not exceed a guaranteed maximum set forth on a "Policy Data" page in the Flexible Policy.

3.   The issue in this case is whether the Flexible Policy allows adjustments to the cost of insurance rates for anything other than changes in the anticipated mortality experience.

4.   There are two relevant sections of the Flexible Policy. All references to the Flexible Policy are to the generic Flexible Policy provided in defendants' motion for summary judgment and/or specifying facts to be without substantial controversy, exhibit one.

a.   On page four, the Flexible Policy provides a "Table of Guaranteed Maximum Monthly Cost of Insurance Rates Per $1000." Underneath the table, the Flexible Policy states, in capital letters:

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONERS 1980 STANDARD ORDINARY MALE MORTALITY TABLE, AGE LAST BIRTHDAY.  ACTUAL MONTHLY COST OF INSURANCE RATES

1   WILL BE DETERMINED BY THE COMPANY BASED ON ITS EXPECTATIONS
2   AS TO FUTURE MORTALITY EXPERIENCE.  HOWEVER, THE ACTUAL COST
3   OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN
4   ABOVE.
5       b.   On page eleven, the Flexible Policy states:
6   Cost of Insurance Rates
7   The monthly cost of insurance rate for the policy is based
8   on the insured's sex, attained age and premium class on the
9   policy date of the policy.  Attained age means age on the
10  prior policy anniversary.
11      The guaranteed maximum monthly cost of insurance rates
12  are shown on a Policy Data Page.
13      Monthly cost of insurance rates will be determined by
14  the Company based on its expectation as to future mortality
15  experience.  Any change in such rates will apply uniformly
16  to all members of the same age, sex and class.  The monthly
17  cost of insurance rates will not be greater than those shown
18  on a Policy Data Page.
19      5.   In 1990 Congress passed the Revenue Reconciliation Act
20  (the "Act").  One of the provisions of the Act increased taxes on
21  life insurance (the "DAC tax").  Under the DAC tax, 7.7% of
22  actual premiums paid by a policyholder are considered additional
23  taxable income to the insurer.  The tax was not only applicable
24  to new policies, where it could be factored into the cost
25  structure, but also to existing policies.
26      6.   The Companies sought to obtain compensation for at
27  least part of the DAC tax by passing it on to policyholders who
28  owned policies that could be adjusted to account for such a tax.

B-52

1   The Companies could not obtain compensation on term life and
2   whole life policies since those policies do not contain any
3   variable elements.  The Companies decided not to obtain
4   compensation on a class of universal life policies called
5   Spectra.  Tha Companies did obtain compensation for the DAC tax
6   through adjustments to the Flexible Policies at issue in this
7   lawsuit.

8       7.   To pass through the DAC tax on its Flexible Policies,
9   the Companies increased the cost of insurance rates on those
10  policies by 10%, effective April 1, 1992.  On one policy form the
11  increase was 5%.  The increase in cost of insurance under the
12  Flexible Policies was not due to any changes in expectations as
13  to future mortality experience.

                        CONCLUSIONS OF LAW

15      1.   Whether a term in an insurance contract is ambiguous is
16  a question of law, not fact.  Under California law, words used in
17  an insurance contract are to be given the plain meaning that a
18  lay person would normally attach to them.  A court should not
19  strain for interpretations to create ambiguities where none
20  exist.  If there is an ambiguity, however, it should be resolved
21  against the insurer and in favor of coverage.  Poland v. Martin,
22  761 F.2d 546, 548 (9th Cir. 1985) (citations omitted).  This rule
23  protects not the subjective beliefs of the insurer, but, rather,
24  the objectively reasonable expectations of the insured.  Bank of
25  the West v. Superior Court, 10 Cal. Rptr. 2d 538, 545 (Cal.
26  1992).

27      2.   In this case, the Court must determine whether the term
28  "cost of insurance" in the Flexible Policy includes factors other

1  than the Companies' expectation as to future mortality
2  experience.  Put another way, the Court must decide whether the
3  Flexible Policy permitted the Company to increase the cost of
4  insurance to account for a change other than in expectations as
5  to future mortality experience.

6       The Flexible Policy states: "Actual monthly cost of
7  insurance rates will be determined by the company based on its
8  expectations as to future mortality experience.  Any change in
9  such rates will apply uniformly to all members of the same sex
10 and class."  This language either clearly supports plaintiff's
11 reading of the Flexible Policy, or is at least ambiguous.  The
12 natural and reasonable interpretation of the Flexible Policy,
13 especially in conjunction with the Flexible Policy language under
14 the chart of "Guaranteed Maximum Monthly Cost of Insurance
15 Rates," is that expectations as to future mortality experience
16 are the basis for the cost of insurance rates.  Therefore, any
17 change in the cost of insurance would logically be based on a
18 change in the Companies' expectations as to future mortality
19 experience.   Defendants contend that the Flexible Policy only
20 requires that any change in cost of insurance rates apply
21 uniformly to all members of the same sex and class-- without
22 limiting the types of changes in cost of insurance that are
23 permissible under the Flexible Policy.  However, that the change
24 in cost of insurance rates must be based on whatever factors the
25 Flexible Policy permits is implicit in the phrase "any change in
26 such rates" immediately following the sentence that describes the
27 cost of insurance.  The previous sentence already stated that the
28 cost of insurance is based on the Companies' expectations as to

1  future mortality experience.  The Court has no difficulty in
2  concluding that the Flexible Policy did not permit the Companies
3  to increase the cost of insurance to account for a change other
4  than in future mortality experience.

5      Defendants contend that there is nothing in the Flexible
6  Policy to suggest that the "cost of insurance" is based solely on
7  expectations as to future mortality experience.  However, even
8  giving the defendants the best of the argument, there is nothing
9  in the Flexible Policy language which suggests that the cost of
10  insurance is based on, among other factors, its expectations as
11  to future mortality experience.  To interpret the Flexible Policy
12  as the defendants do would require reading additional words into
13  it.  At the very least, the Flexible Policy is ambiguous.
14  Because all ambiguities must be resolved against the insurer, the
15  Court finds that Philadelphia breached its obligations under the
16  Flexible Policies with the insured Rosenbaum when it increased
17  the cost of insurance to pass on the DAC tax.

18      3.   There is a question of fact regarding which of
19  Rosenbaum's Flexible Policies were affected by the increase in
20  the cost of insurance.  A hearing will be necessary to determine
21  this issue, and to assess the damages from the breach of
22  contract.  The Court notes that Rosenbaum's Spectra policies were
23  not affected by the increase in the cost of insurance.
24  Therefore, plaintiff is not entitled to any damages on these
25  policies.  Plaintiff's allegations regarding a lapse in the
26  Spectra policies due to improper notice are not at issue in this
27
28

1    lawsuit and may not be addressed at the hearing to assess damages

2    on the Flexible Policies affected by the increase in the cost of

3    insurance.

4    DATED: *March 1, 1994*

5                                    _____
                                     Mariana R. Pfaelzer
6                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B-56

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br><br> CELEDONIA X. YUE, M.D., on behalf of the class of all others similarly situated, and on behalf of the General Public | **DEFENDANTS** <br> CONSECO LIFE INSURANCE COMPANY, successor to Philadelphia Life Insurance Company and formerly known as Massachusetts General Life Insurance Company |
| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): Los Angeles | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Timothy P. Dillon (CSB No. 123953) <br> LAW OFFICES OF TIMOTHY P. DILLON <br> 361 Forest Avenue, Suite 205, Laguna Beach, California 92651 <br> (949) 376-2800 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No          ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332(a) Breach of Contract based on increase in cost of insurance in Universal Life Insurance Policies

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☑ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed?  ☑ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number: _____

CV-71 (07/05)                                    CIVIL COVER SHEET                                    Page 1 of 2

CV08-01506

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). RELATED CASES: Have any cases been previously filed that are related to the present case? ☐ No   ☑ Yes

If yes, list case number(s): _93-0834 MRP and MDL No. 04-1610 AHM, see Notice of Related Cases filed concurrently herewith_

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Los Angeles County - Celedonia X. Yue, M.D.

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.

Los Angeles County - Conseco Life Insurance Company

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary.)
Note: In land condemnation cases, use the location of the tract of land involved.

Los Angeles County

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date_____  March 3, 2007

Notice to Counsel/Parties:  The CV-71 (JS-44)  Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

Timothy P. Dillon (CSB No. 123953)
LAW OFFICES OF TIMOTHY P. DILLON
361 Forest Avenue, Suite 205
Laguna Beach, California 92651
(949) 376-2800
(949) 376-2808  Facsimile

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELEDONIA X. YUE, M.D.,<br>( SEE ATTACHED)<br><br>v.<br><br>PLAINTIFF(S) | CASE NUMBER<br><br>CV08-01506 CAS (CTx) |
| CONSECO LIFE INSURANCE COMPANY,<br>( SEE ATTACHED )<br><br>DEFENDANT(S). | **SUMMONS** |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
Timothy P. Dillon
_____, whose address is:

Timothy P. Dillon, Esq.
LAW OFFICES OF TIMOTHY P. DILLON
361 Forest Avenue, Suite 205
Laguna Beach, California 92651

an answer to the ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

**LA'REE HORN**

Dated: **MAR   4 2008**

By: _____
                              Deputy Clerk

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Carolyn Turchin.

The case number on all documents filed with the Court should read as follows:

## CV08- 1506 CAS (CTx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.