MATTHEW M. WALSH, SBN 175004
mwalsh@deweyleboeuf.com
DEWEY & LEBOEUF LLP
333 South Grand Avenue Suite 2600
Los Angeles, CA 90071-1530
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

JOHN M. AERNI
jaerni@deweyleboeuf.com
Admitted *Pro Hac Vice*
ADAM J. KAISER
akaiser@deweyleboeuf.com
Admitted *Pro Hac Vice*
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

Attorneys for Defendant
CONSECO LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CELEDONIA X. YUE, M.D., on behalf of the class of all others similarly situated, and on behalf of the General Public,<br><br>Plaintiff,<br><br>v.<br><br>CONSECO LIFE INSURANCE COMPANY, successor to Philadelphia Life Insurance Company and formerly known as Massachusetts General Life Insurance Company,<br><br>Defendant. | Case No. CV08-01506 AHM (CTx)<br><br>**DECLARATION OF ADAM J. KAISER IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: August 10, 2009<br>Time: 10:00 a.m.<br>Courtroom: 14<br>Judge: Hon. A. Howard Matz |

I, ADAM J. KAISER, hereby declare as follows:

1. I am a partner at Dewey & LeBoeuf LLP, counsel for Defendant Conseco Life Insurance Company ("Conseco"). I make this declaration upon my own personal knowledge.

2. In support of her motion for class certification, Plaintiff submitted a declaration of Timothy P. Dillon dated June 9, 2009, in which Mr. Dillon purports to address several discovery disputes. The discovery issues are irrelevant to this motion, but as Mr. Dillon's declaration is mistaken, I am constrained to submit this declaration to correct the record.

3. Mr. Dillon and I have been conferring for several months concerning both parties' discovery obligations. As Mr. Dillon knows, Conseco has been diligently looking for relevant documents responsive to Plaintiffs' broad discovery requests. Conseco has produced nearly four thousand pages of documents from its paper files and has completed its production of paper documents. We have provided Mr. Dillon with a detailed privilege log indicating which documents have been withheld on the basis of privilege.

4. Conseco has also produced electronically stored information that is reasonably accessible without an undue burden or cost. Conseco has retained an outside vendor who has searched through approximately 250 gigabytes of data that consisted of hard drive images from three former employees, but that search of massive documents produced only approximately 100 non-privileged, responsive documents. Many of those documents had already been produced. The electronic search cost over $15,000 in vendor fees and far more than that amount in attorney time working on various technical and other issues associated with mining the massive amount of largely irrelevant data on the hard drive images. Despite the significant burden and cost associated with searching these hard drive images, and the fact that such costly searches have produced only a tiny number of relevant documents, Mr. Dillon has asked us to search more hard drive images. I have

informed Mr. Dillon that images do not exist for most of the people he has identified, and as to the few hard drive images that do exist, they are not from key individuals and hence are likely to have even less relevant documents. We have offered to search them if Plaintiff wants to pay for the expense. Mr. Dillon has not responded that request.

5. Mr. Dillon also refers, in ¶ 7 of his Declaration, to "sweeping and unsubstantiated claims of privilege." Conseco has made no such claims. Conseco previously hired counsel in 2002 to assist it in considering potential cost of insurance rate increases, including the litigation risk exposure in doing so and providing a legal opinion on what the policy at issue permitted. In connection with rendering that advice, Conseco's counsel hired actuarial consultants to review potential cost of insurance increase scenarios. Ultimately, some of the work performed by the consultants hired by the lawyers was used by Conseco when it decided in 2002 to implement cost of insurance rate increases in year 21 of the policies. I have previously explained this to Mr. Dillon in great detail.

6. Because some of the actuarial work performed by the consultants was ultimately used by Conseco in its decision concerning the cost of insurance rate increase, Mr. Dillon and I came to an agreement, at my suggestion, memorialized in a stipulation filed with the Court [DE 63], pursuant to which the consultants would produce all actuarial documents related to the cost of insurance rate increases, but that the consultants would not produce documents in which the consultants were providing advice to Conseco's lawyers for the purpose of enabling those lawyers to render legal advice to Conseco.

7. Mr. Dillon and I also agreed, as set forth in the stipulation, that by agreeing to produce these documents, Conseco would not be waiving any privilege between it and its attorneys, or any of the attorneys' work-product privilege, which includes communications between such attorneys and their consultants. This was a sensible and practical solution that satisfied Plaintiff's need for relevant actuarial

3

documents and Conseco's need to maintain its privileges and that of its lawyers. Ultimately, the consultants produced 8,709 pages of documents. Conseco provided a detailed privilege log of the documents withheld from production.

8. Contrary to Mr. Dillon's Declaration, Conseco has cooperated with Plaintiff every step of the way in discovery. For example, although we have no obligation to do so, we have arranged for the deposition of six non-party witnesses. Plaintiff has demanded to take the deposition of Conseco's attorneys who in 2002 advised Conseco with respect to the cost of insurance increase, and we have arranged for that deposition even though we believe it is unnecessary and an offensive attempt to invade privilege.

9. While Conseco has undertaken, at a substantial expense, a good faith effort to locate and produce documents, the same cannot be said of Plaintiff. As of March 25, 2009 Plaintiff produced 78 pages of documents. For more than two months, in letters, emails, and during our meet and confer sessions, we demanded that Plaintiff produce documents in the possession of her lawyers related to the cost of insurance increase, including documents that Plaintiff may use at depositions. Mr. Dillon did not respond to my letters or emails on the subject.

10. During the late afternoon of July 7, 2009 -- less than twenty-four hours prior to Plaintiff's deposition scheduled for the next day -- Plaintiff produced an additional 429 pages of documents. The documents could have been produced at any time, but Plaintiff chose to produce documents on the virtual eve of her deposition. It is unclear if Plaintiff has completed her production of documents.

| | |
|---|---|
| 1 | 11. Attached hereto as Exhibit A is a true and accurate copy of the |
| 2 | deposition of Celedonia Yue taken on July 8, 2009. |
| 3 | |
| 4 | I declare under penalty of perjury under the laws of the United States of |
| 5 | America that the foregoing is true and correct. |
| 6 | |
| 7 | Executed on July 13, 2009 in New York, New York. |

_____
ADAM J. KAISER

5